# State, *ex rel.* Hanna, *et al. v.* Tunstall.

*Quo Warranto to Try Right to Hold Office of Solicitor.*

[DECIDED JAN. 3, 1906, 40 So. REP. 135.]

1. *Statutes; Local Acts; Notice of Application; Sufficiency.*—Notice that application would be made to the Legisalture to amend an act so as to provide that the solicitor, at the expiration of his term, should be appointed by the governor, or elected by the people, was sufficient to support an amendment changing the name of the office from "Solicitor of the City Court of Anniston" to "Solicitor of Calhoun County," and providing that the solicitor should be appointed by the governor to hold office until the next general election for solicitors and then become elective by the people. (MCCLELLAN, C. J., and DENSON, J., dissent.)

2. *Quo Warranto; Exercise of Public Office; Powers not Exercised.*—The exercise of the power to appoint a deputy solicitor not

[State, *ex rel.* Hanna, *et al.* v. Tunstall.]

being necessary to the right to hold the office of solicitor of Calhoun county, and it not being shown that such power is attempted to be exercised, it is unnecessary to consider that feature of the statute upon *quo warranto* proceedings, challenging the right to hold such office, and it not being a matter of substance need not appear in the notice.

3. *Statutes; Local Acts; Form of Enactment; Notice of Application.*—It not being a matter of substance, it is unnecessary for notice required by Sec. 106, Constitution of 1901, to state whether the new enactment shall be in the form of an act amending a section of the original act or not.

APPEAL from Calhoun Circuit Court.

Heard before Hon. JOHN PELHAM.

E. H. Hanna and others on the relation of the State of Alabama filed an information in the nature of *quo warranto* seeking to test the title of the respondent Tunstall to the office of solicitor of Calhoun county, and to ascertain Hanna's standing as to the said office. The information set forth that Tunstall claims and holds the office by virture of an appointment from the governor of Alabama under a local act creating the office, the constitutionality of which is attacked on account of the notice given of the intention to apply for the passage of the act. Hanna asserts his right to the office by virtue of an election under the general election law enacted in 1903.

MARTIN, MATTHEWS & MARTIN and W. L. MARTIN, for appellant. Appellant insists that under Section 106 of the Constitution of 1901, as construed in the prior decisions of this court, the notice of intention to apply for the passage of the act of September 26th, was insufficient and that the court should pronounce void the said act.—*Wallace v. Board of Revenue,* 140 Ala. 491; *Hooton v. Mellon,* 142 Ala. 245; *Ex parte Black,* 144 Ala. 1. The information shows relator's right to the office by election under the general election law.—*Leigh v. The State,* 69 Ala. 261; *State v. Carter,* 50 Ala. 568; *Commissioners v. Thurman,* 116 Ala. 209.

KNOX, ACKER & BLACKMON, for appellee.—The notice of the intention to apply for the passage of the act is sufficient under Section 106 of the Constitution.—*City of Uniontown v. The State, ex rel. Glass,* 145 Ala. 471; *Ex parte Black,* 144 Ala. 1; *Wallace v. Board of Revenue,* 140 Ala. 491. The power to appoint a deputy solicitor did not render the act unconstitutional.—*Greene v. The State,* 143 Ala. 2. The act is not objectionable as containing more than one subject which must be clearly expressed in the caption.—*Hawkins v. Roberts,* 122 Ala. 130; *State, ex rel. Winter v. Sayre,* 118 Ala. 1; *Ex parte Mayor and Aldermen of Birmingham,* 116 Ala. 186; *State v. Rogers,* 107 Ala. 444; *Wolf v. Taylor,* 98 Ala. 254; *Barnhill v. Teague,* 96 Ala. 207; *Ballentyne v. Wickersham,* 75 Ala. 533.

SIMPSON, J.—This is an information in the nature of *a quo warranto,* and the first question raised is the right of the defendant (appellee) to the office of solicitor of Calhoun county, by virtue of the appointment by the governor of Alabama under Local Acts 1903, p. 625. And it is claimed that the notice of the intention to apply for the passage of this act was not sufficient under section 106 of the Constitution.

This provision of our Constitution has been before this court several times, and, from the fact that the courts of other states having like provisions have declared that the Legislature is the sole judge as to whether the constitutional requirement has been met, we have not the benefit of the light which might have been thrown upon the subject by the adjudications of other tribunals. Said section 106 of the Constitution requires that the notice shall "state the substance of the proposed law." In the first case in which this sections came under review, this court quotes from Worcester's Dictionary the meaning of the word "substance," to-wit, "The essential or material part; essence; abstract; compendium; meaning," and hold that, while it is not necessary to publish the bill itself, yet the notice should contain "its essential and material parts, its essence, or an abstract, such as would give the people fair information of what it

was."—*Wallace v. Board of Revenue,* 140 Ala. 491, 504, 37 South. 321. And in a subsequent case, in which it was held that a notice of the intention to apply for the creation of a new county was sufficient, although it did not give the boundaries, and gave a name of the proposed new county different from that which was finally adopted by the Legislature, this court stated that the "substance" of that proposed law was the establishment of a new county, by taking territory from the counties named; there was nothing misleading or deceptive in the notice; and that, if it were required to go into all those particulars, "every change made by the Legislature in fixing and defining the boundaries from that given in the notice, would be fatal to the enactment of the statute." —*Law v. State,* 142 Ala. 621, 38 South. 798. The Century Dictionary also defines "substance" as: "(1) That which receives modifications; essence. (2) Real or essential part; essence." "(5) The meaning expressed by any speech, or writing; the purport"—and gives the illustration from Shakespeare, "All of one nature, of one substance bred." It also gives a further definition as "the main part." Webster's International Dictionary defines "substance" (from sub stare to stand under) as the "substratum;" second the "most important element; the characteristic and essential components, the main part; essential import;" and the great apostle gave it even a wider range when he said: "Faith is the substance of things hoped for." As stated by the chairman of the committee, when this section was before the convention, the object in view was that the community should not "be mislead as to the purpose of the law;" it was "to obviate advantage being taken of the public."

There are other provisions in our Constitution which have the same general purpose in view, though not identical with this one. Section 61 provides that "no bill, shall be so altered, or amended, on its passage * * * as to change its original purpose." And section 45, which requires the subject to be clearly expressed in the title, has been frequently before this court, and, while we do not wish to be understood as intimating that "purpose," "subject," and "substance" are synonymous, yet the ob-

[State, ex rel. Hanna, et al. v. Tunstall.]

ject sought to be sustained in each case is the same. And in construing them we should have the same general end in view. Both our own court, and others, where there are similar constitutional provisions, have given this a broad and liberal interpretation, so as to carry out the intention of the Constitutional framers. That purpose was very aptly expressed by Chief Justice Brickell in these words: "The limitation is not excepted from the cardinal rule that it is only a clear violation of the Constitution which will justify the courts in overruling the legislative will. Every legislative act is presumed to be constitutional, and every intendment is in favor of its validity.—Cooley's Const. Lim. (6th Ed.) 218. While the limitation must be so construed and applied as to avoid and suppress the mischief against which it is directed, the construction must not be strict, embarrassing legislation by making laws unnecessarily restrictive in their scope and operation."—State v. Street, et al., 117 Ala. 207, 23 South. 807. While the requirements of this section and that in regard to subject are not identical, yet their objects are, and their similarity suggests the same general line of reasoning in construing them. The title, giving the subject, may also contain the substance of the act, but does not necessarily do so. That provision requires that the title shall express the subject; this one requires that the notice shall inform the people as to what, in substance, is to be done with that subject. The word "substance" is sometimes used as the antonym of "form," and sometimes as contradistinguished from an entire and detailed statement of matter. The substance of this act is the substitution of the county solicitor described in the notice, for the former solicitor of the city court of Anniston; the form of it might be either an amendment to a former statute, or an act, original in form, accomplishing the same purpose. We say of a political address that it was, in substance, a discussion of the tariff question, while the orator may have incidentally touched on other matters. We think that the object of the Constitution makers in using this term was to indicate that it was not necessary to go into all the details, but to inform the people substantially what

31

changes were proposed, and not interfere with the right of the Legislature to shape it up and work out the details. Any one who has ever had any experience in legislation knows that it is next to impossible to formulate all the details of a proposed law as intelligently beforehand, as he can when he has had the benefit of a conference with the committee having the special matter in charge. Hence, this constitutional provision requires the notice to contain the substance of the proposed law. When it gets into the Legislature, that body is free to act on it, subject to the constitutional restrictions as to changing by amendment, etc., and subject to the further restriction that the substance of the act shall correspond with the notice given.

Applying these definitions and principles to the act in question: Under the law as it stood, there was a solicitor of the city court of Anniston, elected by the Legislature, whose term would not expire until February 25, 1905. Notice was given that application would be made to the Legislature to amend that law, in the following particulars: (1) So as to provide that this solicitor, at the expiration of the term, should be "appointed by the governor or elected by the people." This was a notice to the people that the Legislature was to be asked to decide as to these two methods. No one could be deceived by it, and, if any one had any preference as to whether either one or the other of these methods should be adopted, they should have made known their wishes to their representatives or to the Legislature. The Legislature adopted the elective plan, but, as the time for the regular election had passed, provided for an appointment, to fill the office until the next general election of solicitors, which is in exact accordance with the general law. (2) The law was to be so amended that the new solicitor, in addition to his duties as solicitor of the city court, was to be invested with the powers and duties appertaining to county solicitors under the Constitution of 1901, and he was to be called the county solicitor. The Constitution of 1901 provides for a county solicitor with the same powers and duties, within the county,

[State, *ex rel.* Hanna, *et al.* v. Tunstall.]

as the circuit solicitors, and leaves it to the Legislature to make the office either appointive or elective.—Const. 1901, § 167. The act in question simply defines the duties of this solicitor, in accordance with the constitutional provision referred to.—Local Acts 1903, p. 625.

But it is objected that section 3 of said act gives him the authority to appoint the deputy solicitor. Whether there is any such officer as deputy solicitor in Calhoun county, we are not informed by reference to any local act; but it is not necessary to investigate this matter, as there is no allegation of any attempt by said solicitor to exercise such power, and his right to hold the office is not dependent upon his exercise of that power. We hold that the act in question is not obnoxious to the constitutional provision. The substance of the act is sufficiently set out in the notice, in so far as the substitution has been made, of the county solicitor of Calhoun county, for the solicitor of the city court of Anniston, and the appellee, Tunstall, is entitled to hold the office. As to the form of the enactment, whether it should be in the form of an act amending the section of the original act, or not, that is not substance, and was for the Legislature to determine.—*State, ex rel. etc. v. Rogers, et al.,* 107 Ala. 444, 455, 19 South. 909, 32 L. R. A. 520; *Thomas v. State,* 124 Ala. 48, 55, 27 South. 315. The notice is fully set out in the journal, as required by law.

It is not necessary to go into the matter as to the supposed election of the relator, as, from what has been said, it is evident that there was no law authorizing an election to the office of solicitor of the city court of Anniston at the election in November, 1904.

The judgment of the court is affirmed.

TYSON, DOWDELL, and ANDERSON, JJ., concur. MC-CLELLAN, C. J., and DENSON, J., dissent.