414 So.2d 895 (1982)
BIRMINGHAM-JEFFERSON CIVIC CENTER AUTHORITY
v.
J. N. HOADLEY, as Director of Department of Revenue of Jefferson County, Alabama, et al.
80-697.
Supreme Court of Alabama.
March 19, 1982.
Rehearing Denied May 21, 1982.
*896 John S. Foster of Foster & Conwell and Lawrence Dumas, Jr., William A. Robinson, and Lee E. Bains, Jr. of Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Ronald C. Forehand, Asst. Atty. Gen., for appellees.
Edwin A. Strickland, Birmingham, for amici curiae Tom Gloor, Chriss Doss, and Ben Erdreich, as Commissioners of Jefferson County, Alabama.
James K. Baker, City Atty., Birmingham, for amicus curiae City of Birmingham.
BEATTY, Justice.
This is an appeal from an order issued in a declaratory judgment action which challenged the constitutionality of Act 80-383, 1980 Ala. Acts, Regular Session, at 519-42.[1] That local Act established the Birmingham-Jefferson County Civic Center Authority and purported to bring together in one act all prior laws relating to that particular civic center.
A number of constitutional challenges were made below, including the charge that Section 106 of the Constitution of 1901 was offended because of a variance between Section 4 of the published local law and Section 4 of the enacted local law. The action was submitted to the trial court on the pleadings, a stipulation of the parties, and an affidavit of the custodian of minutes of the Authority's board of directors. That court entered an order declaring, inter alia, that the Act was not unconstitutional on any of the several grounds asserted by the plaintiff. Following the denial of post-judgment motions, this appeal ensued.
We have concluded that the court below was in error in its application of Section 106 to these facts, and upon that basis alone the judgment must be reversed.
Alabama Constitution of 1901, Section 106, as amended by Amendment No. 341, provides:

*897 "No ... local law shall be passed ... unless notice of the intention to apply therefor shall have been published ... which notice shall state the substance of the proposed law...."
Whether the "substance" of the proposed law was published, or whether there was a material variance in the terms of the advertised version and the enacted version, is the question before us. That question centers upon the method of selection of the non-ex officio members of the Authority's Board of Directors.[2]
The parties have stipulated to the version of Section 4 which was advertised, and we have examined the relevant portions of Section 4 which were enacted. Each version is reproduced in columnar form for comparison:
*898
Advertised Version: Enacted Version:
"The term `Legislative Electoral College' shall "The term `Legislative Electoral College,' shall
mean that group of legislators who shall elect the mean that group of legislators who shall appoint
elective members of the Board of Directors of the non-ex officio members of the Board of
the Authority, which group of legislators shall Directors of the Authority, which group of
consist of the following: Each member of the legislators shall consist of the following: Each
House of Representatives of the Legislature of member of the House of Representatives of the
Alabama from that representative district in Legislature of Alabama from that representative
which the county is located and each member of district in which the county is situated. The
the State Senate from that senatorial district in member of the State Senate from that senatorial
which the county is situated, voting jointly. district in which the county is situated. The
 Senate delegation members shall jointly appoint
 "The affairs of the Authority shall be managed five members and the House delegation members
and controlled by a Board of Directors consisting shall jointly appoint four members.
of eleven members....
 "The affairs of the Authority shall be managed
 "Within thirty days after this act, as amended, and controlled by a Board of Directors consisting
becomes applicable to the county, the chairman of eleven members. One of said members shall
of each of the House and Senate legislative be the mayor or chief executive officer of
delegation shall send written notice to each Birmingham, Alabama; at least two additional of
member of the Legislative Electoral College, said members shall be resident citizens of Birmingham,
requesting that the Legislative Electoral College Alabama; one of said members shall
elect those members of the Board of Directors of be the President of Chairman of the governing
the Authority to be elected by the Legislative body of the county; and none of said members
Electoral College. As soon as practical after the shall be a member of the Legislative Electoral
members of the Legislative Electoral College College....
receive the said letters, the Legislative Electoral
College shall elect nine members of the Board of "As soon as practical after the members of the
Directors of the Authority.... The election by Legislative Electoral College receive the said
the Legislative Electoral College shall be by a letters, the Legislative Electoral College shall
majority vote of a quorum of the total membership appoint nine members of the Board of Directors
of the said college present and voting. of the Authority.... The appointments by the
Three members of the Board of Directors of the Legislative Electoral College shall be by a majority
Authority elected by the Legislative Electoral vote of a quorum of the total membership of
College shall serve for a term of two years; four each house delegation present and voting on the
members of the Board of Directors of the respective appointments to be made by its body.
Authority elected by the Legislative Electoral The Senate delegation shall appoint five members
College shall serve for a term of three years; and and the House delegation shall appoint four
four members of the Board of Directors of the members...."
Authority elected by the Legislative Electoral
College shall serve for a term of four years, as
fixed by the Legislative Electoral College, which
terms shall commence from the October 1 closest
to the date on which they are elected. In the
event that nine members of the Board of
Directors were not initially elected or the terms
of office of such members are not fixed by the
Legislative Electoral College, a meeting shall be
called in the same manner as hereinabove
provided to elect the required additional member
or members and to fix the terms of office of all
elected members." (Emphasis in original publication.)
A comparison of these two versions reveals that both provide that the "Legislative Electoral College" consists of:
"Each member of the House of Representatives of the Legislature ... from that representative district in which the county is located and each member of the State Senate from that senatorial district in which the county is situated...."
In the advertised version, the entire "Legislative Electoral College" was to vote "jointly." That requirement was not contained *899 in the enacted version; instead, the Senate and House delegations were separated: each separate delegation was to vote "jointly," but the Senate delegation was to appoint five of the Board members while the House delegation was to appoint only four of the Board members. In other words, although the published bill required that Board members would be elected by the entire Legislative Electoral College, the enacted bill provided that each legislative delegation would act separately, and that the Senate delegation elected one more member than the House delegation. Majority support from both delegations together for each director was changed to majority support from each delegation separately, with one delegation appointing fewer members than the other.
As the trial court aptly noted, the entire Act contains twelve sections, consists of over twenty pages of the volume of 1980 Legislative Acts, and pertains to a variety of subjects. We respectfully disagree with the conclusions of that court, however, that such changes as these, in the total context of the Act, do not constitute material changes.
The Constitutional framers adopted the notice requirements of Section 106 intending that "the essential or material part, the essence, the meaning or an abstract or compendium of the law, was to be given, and not its mere purpose or subject." Wallace v. Board of Revenue, 140 Ala. 491, 37 So. 321 (1904). Out of the many decisions which have considered that section, four well-defined canons of construction have evolved: (1) the "substance" means an intelligible abstract or synopsis of its material and substantial elements; (2) the substance may be sufficiently stated without stating the details subsidiary to the stated elements; (3) the Legislature may shape the details of proposed local legislation by amending bills when presented for consideration and passage; and (4) the substance of the proposed act as advertised cannot be materially changed or contradicted. State ex rel. Wilkinson v. Allen, 219 Ala. 590, 123 So. 36 (1929). It appears to us that the third and fourth of these canons are in issue here.
We do not doubt that the manner of selection of the governing body of the Authority was a material element of its composition. Was the change in their method of selection a "detail" which the Legislature could alter before ultimate passage? Wilkinson, 219 Ala. at 592, 123 So. 36, answers that question in the negative:
"[T]he substance of the act must be published in advance. It cannot have the desired effect if the publication states details of substantive features different materially from the act as passed. If the details are not published but only the general nature of its substantive features, the public is put upon inquiry as to such details, and bound by a failure to inform itself, continuing through such changes and amendments as may stay within such substantive features as published. But if the publication gives details, the public need not pursue the inquiry further in respect to such details; for the information is complete, and it has the constitutional right to assume that such details will not be materially changed throughout the journey of the bill to its final passage and approval." (Emphasis added.)
The earlier quoted portions of Section 4 as advertised disclose the details of the selection process of the Authority's directors. Those details included selection by the entire Legislative Electoral College which would choose all nine non-ex officio directors. It follows that the Legislature was not thereafter free to change those details in any material way. But a change in the very authority by whom those directorships are to be filled, and a change in the number which are to be filled by an altered selection authority, are not immaterial changes, for they go to the very essence of the selection process itself.
In similar cases the method of selection has been held to be a matter of substance. See, for example, Opinion of the Justices No. 67, 246 Ala. 518, 21 So.2d 238 (1945); Parrish v. Faulk, 293 Ala. 401, 304 So.2d 194 *900 (1974). The latter case contains an extensive discussion of the principles discussed herein and their application. We paraphrase from that case: The filling of directorships in the Authority is important, and the authority designated to fill those offices is a matter of substance and not merely a detail which can be changed from the authority designated in the published notice to a different authority not designated in the published notice. Accordingly, our duty compels us to hold that Act No. 80-383 was not enacted in compliance with Section 106 of the Constitution as amended. And because of this holding, it is unnecessary to address the appellant's other allegations of constitutional infirmity.
The judgment must be, and is, reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and FAULKNER, JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
The local circuit judge, after reviewing the evidence submitted on this action for declaratory judgment, found that "[i]n the total context of the act, the change of provisions relating to the persons designated by the law to appoint the Civic Center Board of Directors is not in the judgment of the Court a material change." I agree with that judgment of the trial court, and I think respectfully that this Court has failed to distinguish between the "substance" of Act 383 and what is a "material" change of a "detail."
I also think that this Court's decision will necessarily be construed to hold that if local legislation is advertised at length, it cannot be amended, and if it is amended, even as to "details," then it will be subject to constitutional attack.
The majority relies very heavily upon this Court's case of State ex rel. Wilkinson v. Allen, 219 Ala. 590, 593, 123 So. 36 (1929), where the Court did opine:
"If the details are not published but only the general nature of its substantive features, the public is put upon inquiry as to such details, and bound by a failure to inform itself, continuing through such changes and amendments as may stay within such substantive features as published. But if the publication gives details, the public need not pursue the inquiry further in respect to such details; for the information is complete, and it has the constitutional right to assume that such details will not be materially changed throughout the journey of the bill to its final passage and approval." (Emphasis supplied.)
The Allen court cited no prior decision of this Court for the proposition that a "detail," as opposed to the "substance" of local legislation, could not be "materially changed," but even assuming the correctness of the statement of the principle set out in State v. Allen, supra, the inquiry nevertheless is whether there was a "material" change in a "detail."
Because of my concern about the impact of the quoted statement in State v. Allen, supra, and in view of the fact that the validity of local legislation and "home rule" is of such concern to the people of this state, I examined, in some detail, the proceedings of the 1901 Constitutional Convention and the early decisions of this Court which construe Section 106, and I am convinced that the Court, in State v. Allen, supra, by judicial decree gratuitously added the word "detail" to Section 106 of the Constitution. I do not have to overrule State v. Allen, however, in order to affirm the trial judge in this case; I only have to distinguish it. In State v. Allen, supra, the change of several "details" was held to be a material change. The one change of "detail" here was unimportant, and not misleading.
Since I have questioned the principle of law the majority relies upon so heavily, I first will state the reason for my disagreement with the principle, and then I will state why I think the facts of State v. Allen, supra, are so dissimilar that it is not controlling in this case.

*901 Section 106 only requires that persons affected be notified of the "substance" of proposed local legislation.

Section 106 requires that the persons affected be notified of the "substance" of local legislation; it does not require that local legislation which is amended in the legislative process, especially with regard to matters of "detail," should be declared unconstitutional.
This Court has correctly stated on more than one occasion that Section 106 requires publication of a local act prior to its consideration by the legislature in order to give persons affected notice "of the substance of the proposed law, of its characteristics and essential provisions, and of its most important features." Wilkins v. Woolf, 281 Ala. 693, 208 So.2d 74 (1968). (Emphasis supplied.)
Shortly after the Constitution of 1901 was ratified, this Court had an opportunity to discuss the purpose of Section 106 in Wallace v. Board of Revenue of Jefferson County, 140 Ala. 491, 500, 501, 502, 37 So. 321 (1903). The Court, after declaring the act in question to be a local act, stated:
"Being a local act, it could not be constitutionally passed without a compliance with the requirements of section 106, as to notice and proof of notice. This notice by that section `shall state the substance of the proposed law,' and be published as specified therein, proof of which notice, as required, `shall be exhibited to each house of the legislature,' and spread upon the Journal, and `the court shall pronounce void every special, private or local law which the Journals do not affirmatively show was passed in accordance with the provisions of this section.'
"This notice, as is seen, is required not only to be published for the length of time, and in the manner specified, and proof thereon made to each house of the legislature, and spread upon the journals, but it is also required to `state the substance of the proposed law.'
"The notice given in this instance was as follows: `Notice is hereby given of the intention to apply to the legislature of Alabama for the passage of an act, the substance of which will be to consolidate the city court of Birmingham, the circuit court of Jefferson county, the criminal court of Jefferson county and the chancery court of Jefferson county, into one court with all the powers and jurisdiction now exercised by the courts so consolidated, as well as other powers and jurisdiction, and to provide for clerks of said court and their fees.'
"Section 24, Art. IV of the former Constitution, for which said section 106 is a substitute, provides for a notice to be given of an intention to apply for the passage of a local law, but did not provide what the notice should contain; and simply provided, as to proof, that the evidence of such notice having been given should be exhibited to the legislature, before such bill should be passed. It was silent as to what the journals should show.
"It was held, in construction of this section, that it was not necessary for the legislative journals to show that notice of an intention to apply for the passage of a local law, was given, and that the courts would presume it was given, unless the journals affirmatively showed to the contrary. Clark v. Jack, 60 Ala. 271; Harrison v. Gordy, 57 Ala. 49.
"It turned out, as is well known, that this provision of the constitution became almost a dead letter, and local legislation in many instances was passed without the required notice. This, it was believed, was a great and growing evil, which needed correction, and it was for corrective purposes that said section 106 was ordained. It was always supposed that the people to be immediately affected by local legislation, ought to have notice of an intention on the part of any one desiring to apply to the legislature for such legislation, which was often sought for private and improper ends, and not for the good of the people at large. Any notice, therefore, which falls short of advising the public of the substance of such legislation, would be deceptive or misleading, *902 depriving those opposed to it, of a fair opportunity to protest against and oppose its enactment.
"The word `substance' as employed in the section cannot be said to be synonymous with `subject' or mere purpose. It means `the essential or material part, essence, abstract, compendium, meaning.' Worcester's Dict.
"Referring to the debate in the constitutional convention on the section,as is proper for the sake of interpretation,it appears that before the motion was put to adopt it, a member arose and stated, `Before that motion is put, I would like to ask the chairman of the committee, if the substance of the proposed law means that the law itself, in substance, shall be published, or that the purpose of the proposed law be published. Would it not be better to strike out "the substance," and insert "the purpose?"'
"The chairman replied: `The committee did not desire that the community should be misled as to the purpose of the law, and sometimes the caption of the law is very misleading, and it was to obviate advantage being taken of the public in the matter, that it was written as it is.' The section was then adopted.Official Report, 41st day. From this it would seem, that it was intended that the essential or material part, the essence, the meaning or an abstract or compendium of the law, was to be given, and not its mere purpose or subject."
The Court then established two principles, (1) publication of the title to a proposed act may not suffice to give persons affected notice of the "substance of the proposed law," and (2) the courts were empowered to decide the adequacy of the notice.
In Byrd v. State ex rel. Colquett, 212 Ala. 266, 268, 102 So. 223 (1924), this Court again discussed the purpose of Section 106. The Court stated:
"The Constitutional Convention of 1901 addressed itself to the task of preventing the growing evil of local legislation. By section 104 such legislation is forbidden on certain subjects therein set out. By section 105 is sought to avoid local legislation in cases provided for by general law, or where relief may be had in the courts. Section 106 throws certain safeguards around special, private, or local laws not forbidden by the Constitution. It declares no such law shall be passed unless notice of the intention to apply therefor, stating the substance of the proposed law, shall have been published at least once a week for four consecutive weeks in some newspaper published in the county; that proof of such notice be made by affidavit and spread upon the journals. The courts are enjoined to pronounce void all such laws if proof does not affirmatively appear in the journals. This court has been called upon in numerous cases to construe and enforce these and other provisions governing the passage of laws by the Legislature.
"The same rules of construction obtain in passing upon those provisions as apply to other constitutional limitations upon legislative power. The courts seek to sustain and not to strike down the enactments of a co-ordinate department of the government. If, with the aid of all reasonable intendments, the act can be given effect without violation of the letter and spirit of the Constitution, it will be sustained. All reasonable doubt is resolved in favor of the action of the Legislature. Laws clearly in conflict, however, cannot coexist. In such case the court has the one duty to maintain the Constitution. City of Ensley v. Simpson, 166 Ala. [366], 375, 52 So. 61; Shehane v. Bailey, 110 Ala. 308, 20 So. 359; Zeigler v. S. & N. R. R. Co., 58 Ala. 594." (Emphasis added.)
In Byrd, this Court enjoined reviewing courts to apply the principle of seeking to "sustain" rather than "strike down" enactments.
Five years after this Court decided Byrd v. State, it released the opinion in State v. Allen, which the majority considers controlling. In State v. Allen, the Court correctly stated the general principles of law, and cited prior precedents to support those principles, as follows:
*903 "Section 106 of the Constitution has been considered many times by our courts, and four well-defined canons of construction have been firmly settled. They are as follows: `(1) That the "substance" of the proposed law means, not merely the subject of it, but an intelligible abstract or synopsis of its material and substantial elements (Wallace v. Board of Revenue, supra [140 Ala. 491, 37 So. 321]; Law v. State, supra [142 Ala. 62, 38 So. 798]); (2) the substance of the act may be sufficiently stated without stating the details which are subsidiary to the stated elements (City of Uniontown v. State ex rel. Glass, 145 Ala. 471, 39 So. 814, 8 Ann. Cas. 320; Law v. State, supra; Mayor, etc., of Ensley v. Cohn, supra [149 Ala. 316, 42 So. 827]); and (3) the Legislature is not inhibited from shaping up and working out the details of local legislation by amending bills when presented for consideration and passage.' (4) `The substance' of the proposed act, `as advertised cannot * * * be materially changed or contradicted.' First National Bank v. Smith, 217 Ala. 482, 117 So. 38; State ex rel. Hanna v. Tunstall, 145 Ala. 477, 482, 40 So. 135.
"We are concerned here with the third and fourth canons of construction stated above, and their application to the facts of this case. We are confronted with the following questions, therefore: What features of the act constitute its substance within the meaning of section 106, and whether there has been a material change in any portion thereof from the publication.
"The `substance' is said to be the essential and material parts and essence of said proposed law, or an abstract or compendium thereof, such as would give the people affected fair information of what the law is. Christian v. State, 171 Ala. 52, 54 So. 1001; Wallace v. Jefferson County Board of Revenue, 140 Ala. 491, 37 So. 321. It is only such departure from the `substance' as published which is material that will nullify the act."
219 Ala. at 591-592, 123 So. 36.
In State v. Allen, the Court even follows the principle that while the requirements of Sections 45 and 106 are not the same, the objects are. The Court opined:
"It is said that the purpose of stating the subject in the title is `to prevent deception by the inclusion in the bill of matters incongruous with the title' (Ex parte Pollard, 40 Ala. [77] 99). And `while the requirements [of sections 45 and 106] are not identical, yet their objects are, and their similarity suggests the same general line of reasoning in construing them.' State ex rel. Hanna v. Tunstall, 145 Ala. 477, 481, 40 So. 135, 137."
State ex rel. Wilkinson v. Allen, 219 Ala. 590, 592, 123 So. 36 (1929).
After making this statement, the Court then states the principle that the majority relies on so strongly:
"To accomplish these objects section 106 of the Constitution requires that the substance of the act must be published in advance. It cannot have the desired effect if the publication states details of substantive features different materially from the act as passed. If the details are not published but only the general nature of its substantive features, the public is put upon inquiry as to such details, and bound by a failure to inform itself, continuing through such changes and amendments as may stay within such substantive features as published. But if the publication gives details, the public need not pursue the inquiry further in respect to such details; for the information is complete, and it has the constitutional right to assume that such details will not be materially changed throughout the journey of the bill to its final passage and approval." 219 Ala. at 592, 593, 123 So. 36.
The Court cites no precedent for the proposition that "details of substantive features" cannot be "materially changed," but, of course, the Court did not have to cite any authority. I would point out, however, that the Court in the next paragraph of the opinion makes reference to "substantive features," not to "details of substantive features." *904 I shall discuss this in more detail later in this dissenting opinion.
It is quite apparent that I question the correctness of the Allen rule regarding the requirements of Section 106. The reason I do so is simple. After reading the Constitutional debates and the early cases, I think the Allen Court correctly stated the rule in the first part of its opinion when it stated the "substance" of the bill could not be changed, but stated a different rule in the latter portion of the opinion when it stated that the "details" could not be changed. Nevertheless, even assuming Allen correctly states the rule, I am of the opinion that Allen is distinguishable. The Court there said:
"While in the instant case it may be said that some of the differences between the act as passed and as published are of such unimportant detail as not to be materially misleading, we think some of them are not subject to such comment. State v. Lea, 211 Ala. 68, 99 So. 170; Head v. Hood, 214 Ala. 353, 107 So. 854. On the other hand, considering them altogether, we have concluded that some of the substantial features of the published act are materially different from what they are in the act as passed. We are not concerned with the advisability of any of such changes. We are only called upon to determine whether they are materially variant from the substantial features of the bill as published. We think that both the county authorities and private citizens are directly interested in the changes referred to, and that as to such matters there is likely to be a difference of opinion. Being of this opinion, we find it is necessary to declare that the act offends section 106 of the Constitution, and cannot stand." (Emphasis added.)
219 Ala. at 593, 123 So. 36.
The Court, in this case, in applying the Allen rule that the "details may not be materially changed," reverts to what I consider to be the correct rulethat the "substantive features" cannot be materially changed. In doing this, it seems clear to me that the Allen Court, either wittingly or unwittingly, used "substantive features" and "details of substantive features" interchangeably.
To apply the rule of Allen literally, as has the majority, I believe puts a legislator in a "Catch 22" situation. If he or she does not publish enough of the act to constitute its "substance," it is insufficient. If he or she publishes the proposed bill at length, then any detail of substantive features cannot be deleted or changed, even if those deletions or changes in details are the result of public opposition to some of the "details of substantive features." I just cannot believe that the deliberative process of the legislature can be that restrictive, although I recognize that the Constitution does definitely seek to restrict local legislation. On the contrary, however, I am not unmindful that the concept of "home rule" is much more prevalent today in Alabama, and after this Court's decision in Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala.1978), the people have specifically, by Constitutional Amendment, empowered the legislature to adopt local legislation in specified areas, has ratified local legislation previously passed, and has provided a vehicle for amendment of prior acts which were designated General Bills of Local Application. See, Amendment 389, Amendment 375, for example.
While the "notice" requirement of Section 106, as amended, has been retained in these amendments relating to local legislation (See Amendment 375), I believe that this Court should not apply literally the Allen rule in view of these latest developments of constitutional law by the people.

The Allen case distinguishable on its facts.
The Allen case, even if authority for the holding here, is distinguishable on its facts. The Allen Court looked at all the provisions of the proposed act it was considering and concluded that the act was invalid. The Court noted the changes made in the act, as follows:
"The points of difference are as follows: In the published draft the judge of the Third division of the municipal court *905 was named as the judge of the new court, and his successors were to be elected by the judges of the circuit court (as the judges of the municipal court are selected); he was not required to be learned in the law, nor was an age limit prescribed; and the Third division of the municipal court was to be abolished, and its records transferred to the Second division (which itself had been abolished). Whereas the act as passed provided that the judge and his successors shall be appointed by the Governor; the Third division of the municipal court was left intact, and not abolished; the judge must be learned in the law, and not less than 25 years of age.
"In the published draft, the jurisdiction of the court was to embrace all suits at law where the amount involved did not exceed $300; whereas the act as passed conferred jurisdiction of all such suits where the amount exceeds $100 and does not exceed $300.
"In the published draft the salary of the clerk was fixed at $2,100 per annum and that of the bailiff at $60 per month; the constables of certain precincts should have authority to execute its process. Whereas in the act as passed the salary of the clerk was fixed at $3,000 per annum, and of the bailiff at $100 per month; the constables were not given power to serve its process, but the sheriff was given such authority.
"The question presented, therefore, is whether the substantial features of the published proposed act were materially changed in its passage." 219 Ala. at 591, 123 So. 36.
The trial judge in this instance stated in his opinion that he considered the proposed bill as a whole, and after applying all the law, which I assume included the rule of the Allen case, concluded that the changes were not material. After a similar review of the act as published and as enacted, I come to the same conclusion. Former Governor O'Neal and the Justices of this Court, even in Allen, were concerned whether the public might be misled. I cannot believe that the published bill, which provided for the election of members of the board of the Civic Center Authority by the Jefferson County legislative delegation as a whole "voting jointly," was misleading because the enacted version provides that the senate delegation would appoint five and the house delegation would appoint four. In fact, a liberal construction of "voting jointly" would uphold the act, because the same delegation does "vote jointly" in the enacted version.[1] If we construed the words "voting jointly" liberally, we would hold that the change did not change the fact that the legislative delegation still was "voting jointly." The manner of the "voting jointly" was changed, but the number of Board members to be elected and the persons voting remained the same. That was not true in Allen. In Allen, not only was the appointing authority changed, but several other changes were made. I read Allen, at most, to speak to the cumulative effect of so many changes in so many different areas of the proposed bill. Amicus curiae argues:
"The substance of the subject bill as published was not set out in general terms but instead, contained the specific details of obtaining membership to the Board by providing for a legislative electoral college consisting of all Senators and all Representatives of Jefferson County voting collectively. Accordingly, the statement of the substance is `narrow and restrictive' and, given such details, `the public need not pursue the inquiry further in respect to such details and has the constitutional right to assume that such details will not be materially changed.'
"Act No. 80-383 as passed materially changed such details. The details of the legislative electoral college consisting of all Senators and Representatives voting collectively was removed and other details providing for Senators to elect five members separately and House members to elect four members separately was substituted.

*906 "From the published notice the public had the right to assume that each of its Senators would have a vote on all nine Board members and that each of its Representatives would have a vote on all nine Board members. Instead, the Senators were permitted to vote on only five Board members and the Representatives were permitted to vote on only four Board members. The result is disenfranchisement of the Senators as to four members and disenfranchisement of the Representatives as to five members. The further result is that the Representatives are prevented from voting on a majority of the nine member Board, i.e., the Senators have voting control over a majority of the Board. Certainly, there is no way the public could be held to have anticipated this result from the details published.
"Accordingly, the variances between the details of the bill as published and the details of the Act as passed are of substance, and do amount to material changes and contradictions and cannot constitute mere shaping up and working out of details."
This argument ignores the statement made by this Court in Calhoun County v. Morgan, 258 Ala. 352, 62 So.2d 457 (1952):
"The publication of the act in extenso does not serve to cause every feature of it to be matter of substance which would otherwise be considered mere matter of detail.... The essence of the inquiry is whether the change from the proposal as published in extenso is material. This principle does not prohibit changes which are not material."
It must be remembered that the Jefferson County delegation, because of its size, necessarily may not be able to shape up and work out details of local legislation as is true of counties with a single representative and a shared senator. The citizens of Jefferson County must know that compromises sometimes must be made to accommodate the varying interests in "local legislation" affecting Jefferson County. Does this decision mean that the Jefferson County delegation, and other large local delegations, must work out their differences before they advertise their bills? Apparently so. Then what need is there of legislative debate, and what about the concerns of the whole legislature of Alabama, which must vote on local legislation? Is the legislature so strapped that it cannot amend a detail of legislation which a majority of the public it represents might desire? Apparently so. I recognize the concept of "local courtesy." It was mentioned in the constitutional debates, but since the whole legislature voted on the amendments which are now declared illegal, I must assume that the legislature knew what was published and knew that a change had been made. In any event, I cannot presume that the legislature was consciously trying to mislead the people of Jefferson County by making the changes it did. The evils of local legislation which concerned the Constitutional Convention are not even hinted at in this record.
The Attorney General, in brief, asked some of the same questions I asked:
"If the change made in this piece of local legislation is a material change such as would bring the act into violation of § 106, then what minor changes may the legislature make in local legislation? Is the legislature tied to accepting or rejecting a local bill as published? Certainly it was not the intent of the framers of the Constitution and it has not been the intent of this Court that § 106 be given such a narrow interpretation. We submit that the changes in Act 80-383 were insubstantial and immaterial, and that the Trial Court properly found that in the total context of the Act the change made from the published bill to the adopted Act was not a material one."
In summary, my study of the debates on Section 106 in the Constitutional Convention convinces me that the majority, ostensibly following precedent, has failed to carry out the intent of the framers of the Constitution. The majority takes one detail from one paragraph in a bill which covers 20 pages of the volume of 1980 legislative acts and applies a "narrow and literal construction" to Section 106. In McGehee v. *907 State, ex rel. Tate, 199 Ala. 287, 290, 74 So. 374 (1916), the Court opined:
"`The Constitution does not proceed upon the theory that all the details of every proposed law will be worked out in advance and without the aid of legislative wisdom. It requires only that the local public shall be advised of the substance of the proposed law, of its characteristic and essential provisions, of its most important features.'Christian v. State, 171 Ala. 52, 54 So. 1001.
"A narrow and literal construction would destroy all power of amendment in the legislative process, so that the Legislature would be required to accept, if at all, every local bill in the exact terms of its proposal. Not being inclined to hamper legislation unnecessarily, this court has held that the Constitution was not intended to interfere with the right of the Legislature to shape up and work out the details of local legislation.Ensley v. Cohn, 149 Ala. 316, 42 So. 827; State v. Williams, 143 Ala. 501, 39 So. 276; State ex rel. Hanna v. Tunstall, 145 Ala. 477, 40 So. 135."
The effect of the decision insofar as this case is concerned can be easily remedied during the current session by advertising the act just like it passed originally, but it will take a long time to undo the legal principle that publication of a "detail" automatically makes that "detail" a matter of "substance."
The press of time does not permit me to set out in minute detail all the illustrations from our cases which support my view that the change here was not one of "substance," but I refer the reader to Skinner's Alabama Constitution Annotated, pp. 518-534, where these cases are annotated.
I am painfully aware that I stand alone in this matter, but I believe the effect of this opinion will unduly affect the public's right, after having been notified of pending local legislation, to seek amendments to that legislation. I was always under the impression that the whole purpose of a "notice" requirement was to give the public an opportunity to lobby for or against the proposed legislation. Since I think the Court frustrates this principle, I must respectfully dissent.
NOTES
[1] The action also sought to have the trial court construe the plaintiff's entitlement to the proceeds of certain sales and use taxes levied and allocated by the provisions of Act No. 405 of the 1967 Regular Session. As will be shown, it is unnecessary to address that aspect of the decision below.
[2] Both the advertised version and the enacted version constitute as members of the Board of Directors the mayor of Birmingham and the Chairman of the governing body of the county.
[1] The actual language of the enacted version is "jointly appoint."