These appeals arise out of litigation related to Jefferson County's occupational tax. The issue presented in case number 1000150,Birmingham-Jefferson Civic Center Authority v. Izzi, is whether Act No.2000-215, Ala. Acts 2000, is unconstitutional under § 105, § 104, § 106, § 45, § 71, and/or § 73 of the Constitution of Alabama. The trial judge held that it was *Page 27 
unconstitutional. The issue presented in case number 1992027, Richardsv. Izzi, is whether the trial judge abused his discretion in denying a motion to intervene filed by Jason Richards and Jeffery Terrell.[1]
We conclude that Act No. 2000-215 is unconstitutional under § 106 of the Alabama Constitution of 1901, and we conclude that the trial judge did not abuse his discretion in denying Richards and Terrell's motion to intervene. We also find that the grounds asserted by Richards and Terrell as the basis for their motion to intervene are now moot. For these reasons, we affirm the judgments of the trial court.
 Introduction
At issue in these appeals is the constitutionality of legislation enacted to replace Ala. Acts 1967, Act No. 406 (Reg. Session) (not codified), and Jefferson County Ordinance No. 1120. Pursuant to Act No. 406 and Ordinance No. 1120, Jefferson County has, since 1988, imposed an occupational tax on persons working in that county. However, under Act No. 406 and Ordinance No. 1120, attorneys and certain other professionals were exempt from paying the occupational tax. In 1992, a group of persons who have been subject to the occupational tax since its enactment in 1988 filed an action against Jefferson County, alleging that the exemptions allowed by Act No. 406 and Ordinance No. 1120 were unconstitutional, for various reasons. See Richards v. Jefferson County, (Jefferson Circuit Court, CV-92-3191).
The trial judge in Richards v. Jefferson County, Judge John E. Rochester, held that the exemptions violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and that Act No. 406 and Ordinance No. 1120 were thus unconstitutional. He enjoined Jefferson County from collecting the occupational tax from any taxpayers unless and until it began collecting the occupational tax from the formerly exempt taxpayers. By virtue of this order, Jefferson County began collecting the occupational tax from the formerly exempt professionals.
Various appeals were taken to this Court, and earlier this year, this Court reversed the judgment entered by Judge Rochester in Richards v.Jefferson County. See Jefferson County v. Richards, 805 So.2d 690 (Ala. 2001). In that opinion, we upheld the exemptions in Act No. 406 and Ordinance No. 1120 against constitutional challenges.
In the 2000 Regular Session, the Legislature enacted Act No. 2000-215, which, among other things, purported to:
(1) repeal Act No. 406;
(2) eliminate the County's "piggyback" license-tax scheme;
(3) impose an "occupational tax" on all natural persons who receive compensation from any occupation or profession conducted within the county, regardless of whether those persons were also subject to the state's general licensing statutes;
(4) make appropriations of almost one-third of the money collected under Act No. 2000-215 to one state agency and nearly a hundred non-state agencies;
(5) require employers to calculate the proper amount of the occupational tax due; calculate their employees' deductions from the tax; withhold that amount in a form and manner different from the withholding *Page 28 
requirements of the federal income tax; make the employer's failure to do so subject to criminal and civil penalties based upon the employees' delinquent tax;
(6) lower the rate of taxation; and
(7) extend the $10 million pledge made by the Jefferson County Commission to the Birmingham-Jefferson Civic Center Authority, which was due to expire in 2008, an additional 30 years.
In March 2000, Richard Izzi and the other plaintiffs in case number 1000150, attorneys and other professionals licensed pursuant to the State's general licensing statutes who have historically been exempt from payment of Jefferson County's occupational tax, filed a complaint seeking declaratory and injunctive relief regarding Act No. 2000-215. The plaintiffs asserted that Act No. 2000-215 was unconstitutional on numerous grounds. The plaintiffs also sought a refund of all occupational taxes collected pursuant to Act No. 2000-215. The case was assigned to Judge (now Justice) Thomas Woodall.
Jefferson County, although originally a defendant, was realigned as a plaintiff. Jefferson State Community College ("Jefferson State") and Birmingham-Jefferson Civic Center Authority ("BJCCA"), recipients of a substantial amount of the tax proceeds collected pursuant to Act No.2000-215, filed a motion to intervene, in which they asserted that Act No. 2000-215 was constitutional. The plaintiffs' action was certified as a class action, maintainable under Rule 23(b)(2), Ala.R.Civ.P.
Jason Richards and Jeffrey Terrell, the class representatives inRichards v. Jefferson County,[2] filed a motion to intervene, asserting that Act No. 2000-215 was enacted as a direct response to the order issued in their favor by Judge Rochester in Richards v. JeffersonCounty. Richards and Terrell alleged that the Richards class thus had a vital and unrepresented interest in the outcome of Izzi v.Birmingham-Jefferson Civic Center Authority, i.e., in whether Act No.2000-215 was declared unconstitutional. In their motion, Richards and Terrell asserted that they sought to intervene on behalf of the Richards
class, for the purpose of retaining "every interest and benefit available to them in the Richards case, which is currently pending in the Circuit Court for Jefferson County, and to prevent the diminishment in any respect of any relief or benefit or interest claimed by them therein." They sought intervention as of right, pursuant to Rule 24(a), Ala.R.Civ.P., and permissive intervention, pursuant to Rule 24(b), Ala.R.Civ.P. Judge Woodall denied the motion to intervene; Richards and Terrell appeal. This appeal is case number 1992027.
The Izzi class action proceeded, and Judge Woodall entered an order declaring Act No. 2000-215 unconstitutional. Judge Woodall held that Act No. 2000-215 was a local law that imposed a privilege license tax upon all persons working in Jefferson County, including those persons subject to the State's general licensing statutes; Judge Woodall also held that Act No. 2000-215 directly conflicted with several general laws of this State, which provide that no license tax shall be paid to a county by those persons subject to the State's general licensing statutes. Thus, Judge Woodall concluded that Act No. 2000-215 violated § 105, art. IV, of the Alabama Constitution of 1901. Judge Woodall entered an order enjoining Jefferson County from enforcing or implementing Act No.2000-215. BJCCA and *Page 29 
Jefferson State appeal from this judgment; their appeal is case number 1000150.
 Case Number 1000150
BJCCA and Jefferson State appeal Judge Woodall's order of September 7, 2000, in which he declared Alabama Act No. 2000-215 unconstitutional as violating § 105 of the Alabama Constitution. BJCCA and Jefferson State ask us to determine whether, under a de novo standard of review,[3]
Act No. 2000-215 is unconstitutional under any of the following sections of art. IV of the Alabama Constitution of 1901: § 105; § 104(9); § 104(15); § 106; § 45; § 71; or § 73. Because we conclude that the notice of proposed Act No. 2000-215 was inadequate, we conclude that Act No. 2000-215 violated § 106, art. IV, of the Alabama Constitution. Thus, although we conclude that Act No. 2000-215 is unconstitutional for a different reason than did Judge Woodall, we affirm the judgment of the trial court.
Judge Woodall held that Act No. 2000-215 was a local law, which purported to repeal a general law of this State in violation of § 105 of the Alabama Constitution. In order to reach this conclusion, Judge Woodall was confronted with the thorny question whether a "license tax" is the equivalent, in all respects, of an "occupational tax." If it is, then Act No. 2000-215 was an attempt to repeal by a local law a general law of this State — a constitutionally prohibited event. However, if a license tax is not the same in all respects as an occupational tax, then Act No. 2000-215 did not necessarily attempt to repeal, modify, or vary the general licensing statutes of this State and, thus, did not run afoul of § 105 of the Alabama Constitution.
Judge Woodall concluded:
 "The Alabama Legislature apparently interpreted Act No. 2000-215 to provide for a license tax. The published notice of the bill stated that the bill would levy `a license or privilege tax on the receipt of wages or earnings or other compensation by all natural persons from an occupation or profession conducted in such county.' Section 15 of the act defines `occupational tax' as follows: `The privilege tax on the receipt of earned compensation of a natural person that is levied by a county pursuant to this act.' This Court cannot ignore the words used by the legislature in order to arrive at a distinction between the tax levied by Act No. 2000-215 and the tax authorized by Act No. 97-903 at issue in Walker Co. v. Allen, supra. No meaningful distinctions exist between these two excise taxes. See Estes v. City of Gadsden, 266 Ala. 166, 94 So.2d 744 (1957)."
Based on his finding that no meaningful distinctions existed between a license tax and an occupational tax, Judge Woodall concluded that Act No. 2000-215 was an improper attempt to vary or modify by local law the general licensing statutes of this State.
Because this Court finds that the notice by publication of Act No.2000-215 violated § 106 of the Alabama Constitution, and because this provides a sufficient basis upon which to affirm Judge Woodall's order declaring Act No. 2000-215 unconstitutional, see Thompson v. Skipper RealEstate, Co., 729 So.2d 287, 289 n. 2 (Ala. 1999) (appellate court may affirm lower court's ruling for any reason supported by the record);Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160, 1165 (Ala. 1998) *Page 30 
(same); Smith v. Equifax Services, Inc., 537 So.2d 463, 465 (Ala. 1988) (same), we need not address the issue whether a license tax is, in all respects, the equivalent of an occupational tax. We decline to decide this issue because the power to tax and to create different categories of taxes is the prerogative of the Legislature. See Jefferson County v.Richards, supra, citing State ex rel. Attorney General v. Spann,270 Ala. 396, 118 So.2d 740 (1959); and New York Rapid Transit Corp. v.City of New York, 303 U.S. 573, 578-79 (1938). It is within the authority of the Alabama Legislature to create distinct and separate categories for two such closely related types of privilege taxes, so long as in doing so it does not run afoul of other constitutional provisions. Moreover, we do not have before us an exhaustive analysis of the ramifications, if any, of creating two distinct and separate categories for a license tax and an occupational tax, and it is not the function of this Court to perform such an analysis.
Because we need not decide this issue in order to resolve this case, we decline to do so. However, we conclude that Act No. 2000-215 was enacted in violation of § 106, art. IV, of the Alabama Constitution, and we therefore agree with Judge Woodall's conclusion that Act No. 2000-215 is unconstitutional.
All of the parties to case number 1000150 agree that Act No. 2000-215
is a local law and that, as a local law, it is subject to the requirements of § 106 of the Alabama Constitution. As amended by Amend. No. 341, § 106 provides as follows:
 "Section 106. No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution, . . . unless notice of the intention to apply therefor shall have been published, . . . which notice shall state the substance of the proposed law. . . . The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."
This Court has recognized:
 "The purpose of this notice requirement is threefold. One purpose is to inform all persons affected by the local law, thus giving them an opportunity to voice their opposition. Wilkins v. Woolf, 281 Ala. 693, 697, 208 So.2d 74, 77 (1968). Another purpose is to prevent deception of persons immediately affected. Jefferson County v. Braswell, 407 So.2d 115, 118
(Ala. 1981). A final purpose is to prevent the community involved from being misled as to the law's purpose, and thus to prevent a fraud on the public. Adam v. Shelby County Commission, 415 So.2d 1066, 1072
(Ala. 1982) (Maddox, J., dissenting).
 "The law is that an advertisement of a bill will satisfy § 106 if it advises local persons of the bill's substance, `its characteristic and essential provisions,' or `its most important features.' Wilkins, 281 Ala. at 697, 208 So.2d at 77. `Substance' is defined as `"an intelligible abstract or synopsis of [a bill's] material and substantial elements."' Phalen v. Birmingham Racing Comm'n, 481 So.2d 1108, 1119 (Ala. 1985), citing Birmingham-Jefferson Civic Center Authority v. Hoadley, 414 So.2d 895, 899 (Ala. 1982)."
Deputy Sheriffs Law Enforcement Ass'n of Mobile County v. Mobile County,590 So.2d 239, 241 (Ala. 1991). See also Birmingham-Jefferson CivicCenter Auth. v. Hoadley, 414 So.2d 895, 899 (Ala. 1982) ("The Constitutional framers adopted the notice requirements of Section 106 intending that `the essential or material part, the essence, the meaning or an abstract or compendium of the law, was to be given, *Page 31 
and not its mere purpose or subject.'"), quoting Wallace v. Board ofRevenue, 140 Ala. 491, 37 So. 321 (1904).
Notice of the proposed introduction of a bill that was ultimately enacted as Act No. 2000-215 was published in the December 4, December 11, December 18, and December 25, 1999, issues of the Alabama Messenger, a weekly newspaper published and printed in Jefferson County. That notice provided, in its entirety, as follows:
"STATE OF ALABAMA
"COUNTY OF JEFFERSON
 "NOTICE is hereby given that a bill substantially as follows will be introduced in the 2000 Regular Session of the Legislature of Alabama and application for its passage and enactment will be made:
 "To levy in any county of the state having a population of 500,000 or more, according to the last or any subsequent federal census, a license or privilege tax on the receipt of wages or earnings or other compensation by all natural persons from an occupation or profession conducted in such county; to limit the amount of any such excise or privilege tax to .0046; to provide a deduction from such excise or privilege tax for amounts paid to the state as license taxes or as fees to defray the cost of regulating such occupation or profession; to provide for the collection of said tax and penalties for the enforcement thereof; to provide for the pledge and appropriation of the proceeds of such tax for the payment of bonds previously issued by a public corporation pursuant to Amendment No. 280 of the Constitution of Alabama of 1901, or any similar constitutional amendment; to validate any defect in the previous levy and collection of occupational taxes under Act No. 406 of the 1967 Regular Session to the extent that such validation is not unconstitutional; to provide further that any action challenging the legality or constitutional validity of such tax will be barred unless commenced in a court of competent jurisdiction within a specified period following the date of the first publication of such notice; to provide further for distribution of all or a portion of the proceeds derived from the tax; to repeal Act No. 99-406, 1999 Regular Session, providing for an occupational tax; and to provide that if any section, clause, or provision of the act is held invalid or unenforceable, the entire act shall be invalid."
This notice does not comply with § 106 of the Alabama Constitution of 1901 in that it fails to notify the public of the following essential and material aspects of the proposed legislation:
 (1) That the bill purported to repeal Ala. Acts 1967, Act No. 406, pursuant to which Jefferson County has historically levied and collected its occupational tax;
 (2) That the bill purported to repeal Jefferson County's Business License Tax Ordinance No. 1120, pursuant to which Jefferson County has historically levied and collected its occupational taxes;
 (3) That the bill purported to impose an occupational tax upon persons subject to the State's general licensing statutes, an issue that has been the subject of ongoing litigation in Jefferson County for nearly a decade;
 (4) That the bill purported to require employers to calculate an employee's deductions from the tax in a manner that differed substantially from the manner required by the Internal Revenue Service;
 (5) That the bill purported to make every employer liable for its employees' delinquent tax if the employer failed to withhold the correct amount of tax and to subject the employer to criminal and *Page 32 
 civil penalties for errors in withholding, reporting, and payment of the tax;
 (6) That the bill purported to require certain taxpayers to file an annual return with Jefferson County disclosing all of their net profits realized from certain activities;
 (7) That the bill purported to authorize Jefferson County to charge a delinquent taxpayer interest at a rate of 50% per year on unpaid amounts and to impose a 12% penalty on all unpaid taxes;
 (8) That the bill purported to impose an "occupational tax" that was distinct from a "license tax"; rather, the legal notice specifically identified the tax levied as a "license tax"; and
 (9) That the bill purported to appropriate certain of the proceeds from the tax imposed thereby to numerous non-state agencies and institutions operating in and around Jefferson County.
We believe these omissions were substantial and material and that the notice did not comply with § 106, art. IV, of the Alabama Constitution.[4] For example, Act No. 2000-215 purports to repeal Act No. 406, a general licensing statute that has been in place for over 30 years; however, this significant and material aspect of the legislation is completely omitted from the published notice. Likewise, the fact that Act No. 2000-215 purports to impose an occupational tax upon all natural persons working in Jefferson County, even those subject to the State's general licensing statutes and those historically subject to the County's "piggyback" tax, is omitted from the published notice as well. The fact that the County and various groups of taxpayers have been engaged in extensive litigation related to this issue is a clear indicator that this was a substantial and material aspect of the proposed legislation as to which those persons affected by the proposed legislation should have been made aware before its passage.
Additionally, the proposed legislation purports to appropriate tax proceeds to nearly 100 unrelated, non-state agencies, including charitable and educational institutions not under the absolute control of the State. However, the recipients of the tax proceeds are not identified in even the most general manner in the published notice. When this omission is considered in light of the fact that § 73, art. IV, of the Alabama Constitution prohibits appropriations "to any charitable or educational institution not under the absolute control of the state, . . . except by a vote of two-thirds of all the members elected to each house," the significance and materiality of this omission become clear. By failing to notify the public that the proposed legislation intended to appropriate a percentage of the tax proceeds to such charitable and educational institutions, the published notice failed to meet the recognized purposes of § 106.
Further, we note that the provisions of proposed legislation authorizing Jefferson County to charge interest at the rate of 50% upon unpaid taxes and allowing the imposition of civil and criminal penalties upon an employer for failure to properly calculate an employee's tax can hardly be described as "nominal omissions," as asserted by Jefferson State and BJCCA. Without discussing on an individual basis the materiality of each of the above-listed omissions, we conclude that the proposed notice failed to comply with § 106, art. IV, of the Alabama Constitution; for that reason, we conclude that Act No. 2000-215 *Page 33 
is unconstitutional. We therefore affirm Judge Woodall's order of September 7, 2000. Having found that the published notice of Act No.2000-215 violated § 106 and that Act No. 2000-215 is therefore constitutionally infirm on that basis, we need not consider the other constitutional challenges to Act No. 2000-215. Accordingly, we pretermit a discussion of the other issues raised on appeal in case number 1000150.
 Case Number 1992027
Richards and Terrell appeal from the denial of their motion to intervene in the Birmingham-Jefferson Civic Center Authority v. Izzi
action. According to the motion filed with the trial court, Richards and Terrell sought to intervene on behalf of the Richards class, for the purpose of retaining "every interest and benefit available to them in theRichards case, which is currently pending in the Circuit Court for Jefferson County, and to prevent the diminishment in any respect of any relief or benefit or interest claimed by them therein."
 "The decision to grant or to deny a motion to intervene is within the sound discretion of the trial court, and this Court will not disturb that ruling absent an abuse of discretion. In its exercise of discretion, the trial court must determine whether the potential intervenor has demonstrated: (1) that its motion is timely; (2) that it has a sufficient interest relating to the property or transaction; (3) that its ability to protect its interest may, as a practical matter, be impaired or impeded; and (4) that its interest is not adequately represented."
City of Dora v. Beavers, 692 So.2d 808, 810 (Ala. 1997), citing ValleyForge Ins. Co. v. Alexander, 640 So.2d 925, 927 (Ala. 1994); Rule 24(a), Ala.R.Civ.P. We affirm the trial court's denial of Richards and Terrell's motion to intervene for two reasons.
First, the grounds asserted by Richards and Terrell for their motion to intervene are now moot. This Court, in Jefferson County v. Richards, adjudicated the issues raised in that action and the Court's opinion is now final.[5] As a result of that decision, which was adverse to the position advocated by the Richards plaintiffs, the Richards plaintiffs have no "interest or benefit available to them in the Richards case" and there is no need to "prevent the diminishment in any respect of any relief or benefit or interest claimed by" the Richards plaintiffs in that action. Thus, the issues in which Richards and Terrell claimed an interest and which they asserted as the basis for their motion to intervene are no longer viable. See Marcum v. Ausley, 729 So.2d 845, 848
(Ala. 1999) (a court may limit intervention to the issues in which the putative intervenor claims an interest and in which the court finds that the putative intervenor actually has an interest). For this reason, we affirm Judge Woodall's denial of the motion to intervene filed by Richards and Terrell.
Second, we affirm Judge Woodall's denial of this motion because any interests the Richards class had in the Birmingham-Jefferson Civic CenterAuthority v. Izzi action were already being represented in that action. As a result of this Court's decision in Jefferson County v. Richards, theRichards plaintiffs have no interest in the outcome of theBirmingham-Jefferson Civic Center Authority v. Izzi action that requires greater protection than any other taxpayer. The attorney general, the BJCCA, and Jefferson State each *Page 34 
vigorously defended the constitutionality of Act No. 2000-215; conversely, the Izzi class and Jefferson County challenged the constitutionality of that Act on numerous bases. Thus, any interest theRichards class may have had in having Act No. 2000-215 declared unconstitutional or upheld as constitutional (which interest, we note, was not asserted in the motion to intervene) was already adequately represented before the trial court. Because Richards and Terrell did not establish the elements necessary to support their motion to intervene, see City of Dora, supra, and Valley Forge Insurance Co., supra, we affirm Judge Woodall's denial of their motion to intervene.
 Conclusion
We conclude that Act No. 2000-215 was enacted in violation of § 106, art. IV, of the Alabama Constitution of 1901. In case number 1000150, we affirm the judgment entered on September 7, 2000, in Izzi v.Birmingham-Jefferson Civic Center Authority, in which the trial court declared Act No. 2000-215 to be unconstitutional. In case number 1992027, we affirm the trial court's denial of the motion to intervene filed by Richards and Terrell.
1000150 — AFFIRMED.
1992027 — AFFIRMED.
Moore, C.J., and Brown and Harwood, JJ., concur.
Johnstone, J., concurs in the rationale in part and concurs in the result.
See and Woodall,* JJ., recuse themselves.
* Justice Woodall was the trial judge in this case.
[1] Richards and Terrell sought to intervene in the case of Izzi v.Birmingham-Jefferson Civic Center Authority, (CV-99-1768), while it was pending in the Jefferson Circuit Court. This is the case now on appeal as case number 1000150, styled as Birmingham-Jefferson Civic CenterAuthority v. Izzi, and discussed in this opinion.
[2] The Richards class was composed of the nonexempt taxpayers, who have been subject to Jefferson County's occupational tax since its enactment in 1988.
[3] Our review of constitutional challenges to legislative enactments is de novo. See Jefferson County v. Richards, 805 So.2d 690 (Ala. 2001). BJCCA and Jefferson State raise as issues on appeal all the constitutional challenges presented to the trial court, even those not ruled upon by the trial court.
[4] There may be other significant and material omissions from the notice. We simply conclude that the ones listed here are more than sufficient to support the trial court's judgment finding Act No. 2000-215
unconstitutional.
[5] Richards and Terrell have petitioned the United States Supreme Court for a writ of certiorari as a result of this Court's ruling inJefferson County v. Richards. Their petition was docketed on August 29, 2001, as No. 01-370.