Facts and Procedural History
House Bill 810, enacted as Act No. 2005-199, Ala. Acts 2005, a local law applicable to Etowah County, authorized Etowah County to collect from every person, firm, and corporation engaging in the business of renting rooms, lodging, or accommodations to transient guests in Etowah County a $1.50 surcharge per night per room. The Alabama Constitution requires that notice of a local bill "be published at least once a week for four consecutive weeks in some newspaper published" in the county where the "thing to be affected" is situated. § 106, Ala. Const.1901. In order to comply with this notice requirement, the sponsor of the House Bill 810, Representative Craig Ford, advertised the bill in four editions of the Messenger, a local weekly newspaper published in Etowah County, of which Ford is a co-owner, during the month of April 2005.
The last day that House Bill 810 could have been introduced and still be enacted into law during the 2005 regular legislative session was Tuesday, April 26, 2005, one day before the scheduled publication date *Page 965 
for that week's edition of the Messenger, which was to contain the last of the four published notices of the proposed bill. Realizing this, Ford states, he arranged for the April 27, 2005, edition of the Messenger to be distributed on Monday, April 25, 2005, to ensure that the proposed bill was properly advertised before it was introduced in the legislature.
House Bill 810 was introduced in the legislature on April 26, 2005, and was enacted into law at the end of the 2005 regular legislative session and became effective on May 25, 2005, upon the Governor's approval.
Several hotels in Etowah County ("the hotels") sued the Etowah County Commission ("the Commission") and the Etowah County Civic Center Authority ("the Authority"), the recipients of the proceeds, seeking a judgment declaring the bill void on the basis that it was not properly advertised. The hotels also sought injunctive relief in the form of a stay of the imposition of the surcharge. The hotels argued that the fourth notice of the proposed bill was published not on April 25, 2005, but on April 27, 2005; thus, they contend, the supporters of House Bill 810 gave inadequate notice by publication of the bill in violation of § 106. The Commission and the Authority, on the one hand, and the hotels, on the other, moved the trial court for a summary judgment.
Greg Pappas, the clerk of the House of Representatives of the Alabama Legislature, stated in his affidavit submitted in support of the Commission and the Authority's summary-judgment motion:
 "With respect to House Bill 810, Act No. 2005-199, I reviewed the bill and found that the bill was properly noticed, and a copy of the proof of notice (i.e. legal advertising) was attached to the original bill. Consequently, I made the following certification:
 "`I hereby certify that the notice and proof is attached to the bill, H.B. 810, as required in the General Acts of Alabama, 1975, Act No. 919.'
 ". . . I understand that there was some question as to whether proper notice and proof were attached to the original bill; however, I have checked and have determined that, in fact, proper notice and proof attached to the original bill."
Included in the official legislative records relating to House Bill 810 is the affidavit of Joe Williamson, the publisher of the Messenger. The affidavit, attached to House Bill 810 as introduced, stated "[t]hat there is glued to said affidavit advertising of legal notice which is printed inThe Messenger Newspaper in its regularly circulated editions on April 8, 11, 18, 25, 2005 and that the clipping glued to this affidavit constitutes an exact and true copy of said advertisement as it appeared in The MessengerNewspaper on the dates shown above."
The trial court denied the Commission and the Authority's motion and granted the hotels' motion, finding that "the notice of publication required by Article IV, Section 106, of the Alabama Constitution, as amended by Amendment 341, was not satisfied before House Bill 810 was introduced." The Authority appeals.[1]
 Issue
The issue in this case is whether this Court may look beyond the legislature's own certification that proper notice under Art. IV, § 106, Ala. Const.1901, had been given. *Page 966 
 Standard of Review
This Court reviews a summary judgment de novo. Blackmon v.Nexity Fin. Corp., 953 So.2d 1180, 1188 (Ala. 2006). "Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant." Brigmanv. Dejute, 593 So.2d 51, 53 (Ala. 1991).
 Analysis
Article IV, § 106, Ala. Const.1901, as amended by Amend. No. 341, states:
 "No . . . local law shall be passed on any subject not enumerated in section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the state, in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive weeks in some newspaper published in such county or counties . . . prior to the introduction of the bill."
(Emphasis added.) The notice requirements of § 106 "are principally designed to assure that notice of legal or official proceedings is given to those persons who have or who may have an interest therein." Gulf Coast Media, Inc. v. MobilePress Register, Inc., 470 So.2d 1211, 1213 (Ala. 1985). For this reason, in order to satisfy the notice requirements of § 106, all four of the weekly notices must have been published before the bill was introduced in the legislature. The trial court found that the "legal notice for House Bill 810 appeared for the fourth time in The Messenger's edition dated April 27, 2005," and that "House Bill 810 was introduced in the Legislature on April 26, 2005, one day before." Concluding that the publication date of the newspaper was April 27, 2005, and that that date was one day after House Bill 810 was introduced in the legislature, the trial court declared Act No. 2005-199 invalid.
In Byrd v. State ex rel. Colquett, 212 Ala. 266, 271,102 So. 223, 228 (1924) (opinion on rehearing), this Court noted:
 "Courts cannot go behind the Journals of the Legislature to determine whether publication was in fact made on the dates shown by the proof entered on the Journals.
 "It is for the Legislature to ascertain whether the proof made as required by the Constitution is true or false. The Journals import absolute verity on matters duly shown therein."[2]
Although this Court subsequently overruled Byrd inSt. Elmo Irvington Water Authority v. Mobile CountyCommission, 728 So.2d 125, 127 (Ala. 1998), we specified inSt. Elmo that the holding of Byrd remained effective "in regard to an act as to which the legislature has evidenced compliance with the mandate of § 106 by including, in the appropriate journal, the date and manner of the publication of the notice of the proposed bill." In the present case, the legislature has evidenced that *Page 967 
House Bill 810 complied with § 106 by indicating in the official legislative journal that the affidavit of Joe Williamson, specifying the dates of legal notice for House Bill 810 as "April 8, 11, 18, 25" and the manner of the publication as "legal notice . . . printed in The MessengerNewspaper," was attached to House Bill 810. As this Court stated in Byrd, "It is for the legislature to ascertain whether the proof made as required by the Constitution is true or false." 212 Ala. at 271, 102 So. at 227 (opinion on rehearing). Each legislator swears the same oath that the Justices on this Court swear — to uphold the laws and constitution of the State of Alabama;[3] therefore, with respect to matters that are internal to the functioning of the legislative branch, we defer to the judgment of the legislature.Birmingham-Jefferson Civic Center Authority,912 So.2d at 221 ("[T]he judiciary should not question the determination by the legislative branch of whether a bill was passed by the requisite majority vote of the house. To do so would be to demonstrate a lack of the respect due a coordinate branch of government. As Justice Scalia states in his concurrence in [United States v.] Munoz-Flores[, 495 U.S. 385, 410
(1990)]: `Mutual regard between the coordinate branches, and the interest of certainty, both demand that official representations regarding such matters of internal process be accepted at face value.'" (Scalia, J., concurring in the judgment)). Because the legislative journal in this case "evidence[s] compliance with the mandate of § 106 by including, in the appropriate journal, the date and the manner of the publication of the notice of the proposed bill," as is required by our decision in St. Elmo, 728 So.2d at 127, we accept as true the legislature's certification that proper notice was given for the bill. We therefore reverse the summary judgment in favor of the hotels.
 Conclusion
The legislative journal evidences the legislature's determination that proper notice was given for House Bill 810; therefore, we reverse the summary judgment in favor of the hotels and remand this case to the trial court for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
[1] The notice of appeal lists only the Authority as the appellant, and the only appellant's brief filed in this Court was filed on behalf of the Authority.
[2] In Birmingham-Jefferson Civic Center Authority v.City of Birmingham, 912 So.2d 204, 217 (Ala. 2005), we noted:
 "Section 53, Ala. Const.1901, expressly provides that `[e]ach house shall have the power to determine the rules of its proceedings.' The power of the legislature to determine the rules of its own proceedings is `unlimited except as controlled by other provisions of our Constitution,' and `unless controlled by other constitutional provisions the courts cannot look to the wisdom or folly, the advantages or disadvantages of the rules which a legislative body adopts to govern its own proceedings.'"
(Citing Opinion of the Justices No. 185,278 Ala. 522, 525, 179 So.2d 155, 158 (1965).)
[3] "All members of the legislature, and all officers, executive and judicial, before they enter upon the execution of the duties of their respective offices, shall take the following oath or affirmation:
 "`I ___ solemnly swear (or affirm, as the case may be) that I will support the Constitution of the United States, and the Constitution of the State of Alabama, so long as I continue to be a citizen thereof; and that I will faithfully and honestly discharge the duties of the office upon which I am about to enter, to the best of my ability. So help me God.'"
Ala. Const.1901, Art. XVI, § 279.