69 So.3d 827 (2011)
JEFFERSON COUNTY
v.
Jeffrey WEISSMAN, D.D.S., et al.
1100293.
Supreme Court of Alabama.
March 16, 2011.
*830 Matthew B. Lembke and Andrew L. Brasher of Bradley Arant Boult Cummings LLP, Birmingham; Robert D. Segall of Copeland, Franco, Screws & Gill, P.A., Montgomery; and Jeffrey M. Sewell, county atty., Birmingham, for appellant.
Wilson F. Green of Fleenor Green & McKinney LLP, Tuscaloosa; E. Clayton Lowe, Jr., of Lowe & Grammas, LLP, Vestavia Hills; and Donald R. Jones, Jr., Montgomery, for appellees.
COBB, Chief Justice.
Jefferson County ("the County") appeals from a summary judgment of the Jefferson Circuit Court[1] enjoining the County from collecting taxes under Act No. 2009-811, Ala. Acts 2009 ("the 2009 Act"),[2] as of December 1, 2010. The plaintiffs, represented by Dr. Jeffrey Weissman, a Jefferson County dentist, filed the instant action in December 2009, contending that the 2009 Act was unconstitutional on a number of grounds. The action was shaped by the ensuing litigation into a class action the members of which are professionals and businesses subject to the taxes imposed pursuant to the 2009 Act. The plaintiffs' complaint, as finally amended, asserts that the 2009 Act is unconstitutional because (1) it conflicts with Ala. Const. 1901, Art. IV, § 105,[3] (2) the notice requirements of Ala. Const. 1901, Art. IV, § 106,[4] were violated as to the 2009 Act, (3) it violated Ala. Const. 1901, Art. XI, § 212 (forbidding the delegation of taxing authority), and (4) it violated Ala. Const. 1901, Art. IV, § 45 (laws restricted to one subject, which is clearly expressed in the title). After the plaintiffs were certified as a class, a motion that the County did not oppose, the parties filed cross-motions for a summary judgment. The case was thoroughly briefed, and the trial court conducted a hearing on the summary-judgment motions, thereafter denying the County's summary-judgment *831 motion and entering a summary judgment for the plaintiffs. The summary judgment for the plaintiffs included an injunction against further tax collections by the County under the 2009 Act. The trial court also determined that its order would be prospective only and that a retroactive refund of taxes already collected would be "neither appropriate nor justified," citing Ex parte Coker, 575 So.2d 43 (Ala.1990). In pertinent part, the trial court's order states:
"The Court finds that the 2009 Act, a local act, is unconstitutional because the published notice of the 2009 Act does not comply with Article IV, Section 106 of the Alabama Constitution and applicable case-law. Specifically, the Court finds that the notice of the 2009 Act does not accurately describe numerous material and substantial elements of the bill, including that the 2009 Act is to be retroactively applied or that the 2009 Act confers enabling authority to impose a new occupational tax on both previously taxed taxpayers and on a new class of `licensed professionals' which was exempt from the `old' Jefferson County's Occupational Tax. The Court notes that the omission or misstatement of any one material and substantial element of the 2009 Act with respect to the notice would, standing alone, be sufficient to render the 2009 Act unconstitutional under Section 106. The Court finds unpersuasive Jefferson County's argument that Section 106's notice requirements do not apply because the 2009 Act was passed by the Alabama Legislature during a special session. The Court also finds unpersuasive Jefferson County's argument that publishing simply the `general nature' of the Act's substantive features satisfies the notice requirements imposed under Section 106."
The County appealed; this Court granted its motion to expedite.[5] Consequent with this expedited appeal, this Court ordered the trial court to modify its injunction to permit the County to continue collecting taxes under the 2009 Act during the pendency of the appeal, with the funds so collected to be placed in an interest-bearing escrow account for distribution in accord with this Court's determination of the merits.

Historical Considerations
The history of the litigation involving Jefferson County's occupational taxes is largely set out in this Court's two opinions involving plaintiff Jessica Edwards: Jefferson County Commission v. Edwards, 32 So.3d 572 (Ala.2009) ("Edwards I"), and Jefferson County Commission v. Edwards, 49 So.3d 685 (Ala.2010) ("Edwards II"). The case underlying this appeal continues the "exquisitely complex sequence of legislative enactments and related litigation," Edwards I, 32 So.3d at 575, that was addressed in those opinions. In summary, Edwards I and Edwards II dealt with the application of Act No. 406, Ala. Acts 1967 ("the 1967 Act"), which authorized the County to levy license or privilege taxes upon persons for engaging in businesses but exempted from its provisions licensed professionals who were required to obtain licenses from the State under Ala.Code 1975, § 40-12-1 et seq. Thereafter, under the authority of the 1967 Act, the County imposed a business-license tax on businesses and an occupational tax on individuals.
Edwards I and Edwards II were appeals from judgments in the plaintiffs' class action contending that the 1967 Act had been repealed by the enactment of Act *832 No. 99-669, Ala. Acts 1999 ("the 1999 repeal Act"); the trial court agreed, finding that a retroactive refund was not warranted but that collections under the 1967 Act were enjoined prospectively in January 2009. The County asserted that it required immediate enactment of an act to restore comparable taxing authority in order for the County to remain fiscally solvent; the trial court stayed application of the injunction until the end of the regular legislative session in May 2009. However, the legislature failed to pass any legislation during the regular session restoring the County's taxing authority. The County's fiscal position deteriorated rapidly, and it soon began restricting usual services. The summer months saw increasing political pressure for State government to address the situation, and numerous notices regarding proposed local laws were published in local and statewide news media. After the County's legislative delegation reached agreements as to the details of a proposed replacement-taxing plan, Governor Riley, acting pursuant to Ala. Const. 1901, Art. V, § 122,[6] called the legislature into an "extraordinary session" to address the situation. The 2009 Act was subsequently enacted during that session. Among other things, the 2009 Act purports to reenact the 1967 Act without the original exemptions, to repeal the 1999 repeal Act, and essentially to reinstate and approve the County's tax collections as they were conducted under the 1967 Act. In addition, the 2009 Act provided for a referendum to be held in June 2012 allowing the voters to approve or to reject the authorization to continue levying the tax. Section 10 of the 2009 Act also provides for the severability of any portion of the 2009 Act found invalid without invalidating the remainder of the 2009 Act.
Soon after the 2009 Act was enacted, this Court in Edwards I affirmed the trial court's judgment holding that the 1999 repeal Act had repealed the 1967 Act. The Court took judicial notice of the passage of the 2009 Act but noted that its validity was not then before the Court. 32 So.3d at 580 n. 5. In Edwards II, the Court did address various aspects of the application of the 2009 Act:
"After our affirmance of the trial court's judgment in [Edwards I], the taxpayers, in light of the retroactivity provisions in Act No. 2009-811, filed a motion to release the tax proceeds that had been placed in the escrow fund to a court-appointed settlement administrator for the calculation of refunds due. The County filed a motion to dissolve the injunction, to vacate the escrow order, and to release the escrowed taxes to Jefferson County. The taxpayers then filed a motion to enforce the January 12, 2009, order;[[7]] the County filed a motion to clarify the escrow period. On December 23, 2009, the trial court entered an order denying the County's motion to dissolve the injunction, holding that Act No. 2009-811 violates § 95 of the Alabama Constitution of 1901 prohibiting the enactment of legislation taking away a cause of action after a suit based on that cause of action has been filed."
*833 49 So.3d at 688. With respect to a violation of Ala. Const. 1901, Art. IV, § 95, the Court determined that "there remains a problem with a portion of the [2009 Act]. Section 7 of the act `ratified, validated, and confirmed' the collection of the taxes determined to be illegal and, therefore, is the equivalent of an impermissible legislative determination that there could be no recovery of these illegally collected taxes, contrary to the prohibition against taking away a cause of action in § 95." 49 So.3d at 693. After a painstaking analysis, the Court in Edwards II concluded:
"We reverse that aspect of the December 23, 2009, judgment in which the trial court declared the retroactivity of tax collection pursuant to Act No. 2009-811 to be unconstitutional, but, because we strike that portion of Section 7 of Act No. 2009-811 ratifying, validating, and confirming the collection of the illegal tax, we affirm that aspect of the judgment in which the trial court ordered the transfer of the escrowed funds to a special master. We reverse the January 15, 2010, order in which the trial court ordered the County to pay postjudgment interest. In further proceedings on remand, consistent with the determination that Act No. 2009-811 is not unconstitutional [with respect to § 95], the trial court, whether or not it uses the services of a master to assist it in the distribution of the escrowed funds, shall compute the County's liability exclusive of taxes collected after January 12, 2009, but levied prior thereto, and without the obligation to pay interest pursuant to § 8-8-10, Ala.Code 1975."
49 So.3d at 697.
Of course, during the litigation in Edwards I and Edwards II, the litigation in the instant case was proceeding through the trial court, hence this appeal. Because the trial court in the instant case determined that the publication notice for the 2009 Act violated the requirements of § 106 and that the 2009 Act was therefore unconstitutional, we first consider the County's arguments with respect to the application of § 106. In that respect, the County asserts (1) that § 106 does not apply because the 2009 Act was enacted under the Governor's authority to call the legislature into special session pursuant to § 122; (2) whether the notice under § 106 was adequate in the context of this case was a nonjusticiable political question; (3) the notice published for the 2009 Act was constitutionally sufficient under § 106.

I. Conflict Between § 106 and § 122

The County first asserts that the Governor's authority to call a special session envisions an emergency situation in which the legislature is constrained to address the subject matter put forth by the Governor. See Opinion of the Justices No. 189, 281 Ala. 20, 198 So.2d 304 (1967)(concluding that § 122, considered in conjunction with Ala. Const. 1901, Art. IV, § 76, restricted the legislature to addressing only those matters stated by the Governor to be addressed, in the absence of a two-thirds vote of each house of the legislature). See also Opinion of the Justices No. 173, 275 Ala. 102, 152 So.2d 427 (1963) (noting that § 122 provides for convening the legislature in emergency situations). Thus, argues the County, because § 122 empowers the Governor to act immediately to call a special session, its provisions conflict with the notice requirement of § 106, which necessarily imposes a delay of some 22 days before the legislature can even introduce a legislative bill for consideration. In light of this conflict, the County argues that the specific power afforded the Governor under § 122 must trump the provisions of § 106 when a special session is called. In support of this argument, the County relies on State ex rel. Sewerage & Water Board v. Michel, 127 La. 685, 53 So. *834 926 (1910), which, in the context of a dispute over the creation of a water and sewage board for the City of New Orleans, held that the Governor's power to call an emergency session for the creation of the board trumped the notice requirements of the Louisiana constitutional provision comparable to § 106. See also Fruge v. Board of Trustees, 6 So.3d 124 (La.2008) (holding that the provision in the Louisiana Constitution requiring publication of notice in the official state journal of any proposal to effect a change in any provision of the public-retirement system at least 30 days before introduction of the bill in the legislature did not apply to legislation enacted during an extraordinary session of the legislature).
The courts of this State have not previously addressed this argument. Accordingly, we note first that the plain, and mandatory, language of § 106 applies to any "special, private, or local law" without any specified exception. We are cognizant that the long-settled and fundamental rule binding this Court in construing provisions of the constitution is adherence to the plain meaning of the text. "`Constitutions are the result of popular will, and their words are to be understood ordinarily as used in the sense that such words convey to the popular mind' (6 Am. & Eng. Ency. Law, 924, 925)." Hagan v. Commissioner's Court of Limestone County, 160 Ala. 544, 562, 49 So. 417, 423 (1909). "`"In construing a constitutional provision, the courts have no right to broaden the meaning of words used and, likewise, have no right to restrict the meaning of those words."' This Court is `"not at liberty to disregard or restrict the plain meaning of the provisions of the Constitution."'" City of Bessemer v. McClain, 957 So.2d 1061, 1092 (Ala.2006) (opinion on second application for rehearing) (quoting City of Birmingham v. City of Vestavia Hills, 654 So.2d 532, 538 (Ala. 1995), quoting in turn McGee v. Borom, 341 So.2d 141, 143 (Ala.1976)). "[I]n determining legislative intent, this Court will give words and phrases the same meaning they have in ordinary, everyday usage." Farrior v. Lawrence County, 491 So.2d 233, 234-35 (Ala.1986).
Further, although the courts of this State have not addressed the precise argument presented by the County, this Court has found § 106 applicable to laws passed in "extraordinary" or special legislative sessions. In City of Adamsville v. City of Birmingham, 495 So.2d 642 (Ala.1986), this Court considered the issue whether legislation to provide for the creation of fire districts in Jefferson County by annexation of property in the City of Adamsville was void as violative of § 106. The legislation was noticed pursuant to § 106 prior to a regular session of the legislature but failed to pass during the regular session. The legislation was reintroduced and passed in a subsequent special session, but no new notice had been advertised before the special session. The Court noted that the purpose of § 106 "`is the prevention of deception and surprise. It requires that all those immediately affected by local legislation be informed of the substance of the proposed legislation so that they may have a fair opportunity to protest or otherwise express their views.'" 495 So.2d at 644 (quoting Opinion of the Justices No. 312, 469 So.2d 108, 109 (Ala.1985)). In holding that the failure to give new notice before the special session at which the legislation was enacted was violative of § 106, the Court considered and rejected the argument that there was a conflict between the constitutional provision providing for the creation of fire districts under Amendment No. 239 and Amendment No. 314, Ala. Const. 1901,[8] on the one hand, and § 106, on the other, and specifically held:

*835 "As for Adamsville's contention that Amendments No. 239 and 314 would govern the procedural technicalities rather than § 106, we recognize that Amendments No. 239 and 314 authorized the legislature to enact legislation to provide for the creation of fire districts in Jefferson County; however, those amendments did not change the constitutional procedures mandated for the adoption of such legislation."
495 So.2d at 643. Similarly, it does not follow that the Governor's authority to call the legislature into special session pursuant to § 122 should change the constitutional procedures mandated in § 106 for the adoption of legislation. In addition to City of Adamsville, this Court also applied § 106 to laws passed during special sessions in White v. State, 201 Ala. 387, 78 So. 449 (1918), and Robinson v. City of Ensley, 52 So. 69 (Ala.1909).
Further, the argument that there is a conflict between § 106 and § 122 is undermined by the fact that the former provision constrains the legislature while the latter provision constrains the Governor. Under the circumstances of this case, the 2009 Act could have been properly noticed pursuant § 106 within the time constraints for the special session called pursuant to § 122.[9] With respect to Michel and Fruge, the Louisiana cases relied upon by the County, the provision in La. Const., Art. III, § 2(B), providing for calling the legislature into extraordinary session, unlike its Alabama counterpart, requires at least five calendar days' notice before the special session can be called. Thus, in the Louisiana cases the court did consider actual conflicts between the duration of the notices required for the enactment of local laws and the Governor's authority to call a special session. In this State, § 122 permits the Governor to call a special session without notice, for example, beginning the next day. This authority does not conflict with the requirement of § 106 that the public be informed of the substance of the proposed local legislation that will affect them. Accordingly, we conclude that the Governor's authority to call a special session pursuant to § 122 does not affect the application of § 106 to the enactment of laws that might be considered in that special session.

II. Justiciability

The County asserts that whatever the application of § 106 to the 2009 Act, this Court may not review the adequacy of the notice given for the 2009 Act because any such review would be of a nonjusticiable political question. In support of its argument, the County cites Etowah County Civic Center Authority v. Hotel Services, Inc., 974 So.2d 964 (Ala.2007), in which this Court held that the legislature was the proper body to determine whether the publication of the notice for a proposed local bill was constitutionally adequate. Thus, the County argues, the Journal of the House of Representatives for the 2009 special session of the legislature showing the house clerk's certification that "THE NOTICE AND PROOF IS ATTACHED TO THE BILL" that became the 2009 Act establishes that the publication of notice required by § 106 was met, and this Court cannot go beyond that certification without intruding into the sphere of legislative operations. The Court stated its rationale in Etowah County Civic Center as follows:

*836 "The notice requirements of § 106 `are principally designed to assure that notice of legal or official proceedings is given to those persons who have or who may have an interest therein.' Gulf Coast Media, Inc. v. Mobile Press Register, Inc., 470 So.2d 1211, 1213 (Ala. 1985). For this reason, in order to satisfy the notice requirements of § 106, all four of the weekly notices must have been published before the bill was introduced in the legislature. The trial court found that the `legal notice for House Bill 810 appeared for the fourth time in The Messenger's edition dated April 27, 2005,' and that `House Bill 810 was introduced in the Legislature on April 26, 2005, one day before.' Concluding that the publication date of the newspaper was April 27, 2005, and that that date was one day after House Bill 810 was introduced in the legislature, the trial court declared Act No. 2005-199 invalid.
"In Byrd v. State ex rel. Colquett, 212 Ala. 266, 271, 102 So. 223, 228 (1924) (opinion on rehearing), this Court noted:
"`Courts cannot go behind the Journals of the Legislature to determine whether publication was in fact made on the dates shown by the proof entered on the Journals.
"`It is for the Legislature to ascertain whether the proof made as required by the Constitution is true or false. The Journals import absolute verity on matters duly shown therein.'2
"Although this Court subsequently overruled Byrd in St. Elmo Irvington Water Authority v. Mobile County Commission, 728 So.2d 125, 127 (Ala. 1998), we specified in St. Elmo that the holding of Byrd remained effective `in regard to an act as to which the legislature has evidenced compliance with the mandate of § 106 by including, in the appropriate journal, the date and manner of the publication of the notice of the proposed bill.' In the present case, the legislature has evidenced that House Bill 810 complied with § 106 by indicating in the official legislative journal that the affidavit of Joe Williamson, specifying the dates of legal notice for House Bill 810 as `April 8, 11, 18, & 25' and the manner of the publication as `legal notice ... printed in The Messenger Newspaper,' was attached to House Bill 810. As this Court stated in Byrd, `It is for the legislature to ascertain whether the proof made as required by the Constitution is true or false.' 212 Ala. at 271, 102 So. at 227 (opinion on rehearing). Each legislator swears the same oath that the Justices on this Court swearto uphold the laws and constitution of the State of Alabama; therefore, with respect to matters that are internal to the functioning of the legislative branch, we defer to the judgment of the legislature. Birmingham-Jefferson Civic Center Authority, 912 So.2d at 221 (`[T]he judiciary should not question the determination by the legislative branch of whether a bill was passed by the requisite majority vote of the house. To do so would be to demonstrate a lack of the respect due a coordinate branch of government. As Justice Scalia states in his concurrence in [United States v.] Munoz-Flores[, 495 U.S. 385, 410 (1990)]: "Mutual regard between the coordinate branches, and the interest of certainty, both demand that official representations regarding such matters of internal process be accepted at face value."' (Scalia, J., concurring in the judgment)). Because the legislative journal in this case `evidence[s] compliance with the mandate of § 106 by including, in the appropriate journal, the date and the manner of the publication of the notice of the proposed bill,' as is required by our decision in St. Elmo, 728 So.2d at 127, we accept as *837 true the legislature's certification that proper notice was given for the bill.
"2 In Birmingham-Jefferson Civic Center Authority v. City of Birmingham, 912 So.2d 204, 217, (Ala.2005), we noted:
"`Section 53, Ala. Const. 1901, expressly provides that "[e]ach house shall have the power to determine the rules of its proceedings." The power of the legislature to determine the rules of its own proceedings is "unlimited except as controlled by other provisions of our Constitution," and "unless controlled by other constitutional provisions the courts cannot look to the wisdom or folly, the advantages or disadvantages of the rules which a legislative body adopts to govern its own proceedings."'
"(Citing Opinion of the Justices No. 185, 278 Ala. 522, 525, 179 So.2d 155, 158 (1965).)"
974 So.2d at 966-67 (footnote 3 omitted).
The County's argument is based on this Court's deference to the legislature's determination of facts, in the line of cases under Byrd, concerning the proof of publication of notice. However, this Court has also recognized that review of the adequacy of publication notice is distinct from review of the proof of publication. As we stated on application for rehearing in St. Elmo Irvington Water Authority v. Mobile County Commission, 728 So.2d 125 (Ala. 1998):
"The Commission directs our attention to cases such as Tanner v. Tuscaloosa County Comm'n, 594 So.2d 1207 (Ala.1992), where the issue of adequacy of description, rather than frequency of publication, was resolved by comparing the content of the publication with the content of the act. These cases are not applicable to the line of authority following Byrd v. State ex rel. Colquett, 212 Ala. 266, 102 So. 223 (1924), dealing only with the fact of publication."
728 So.2d at 127.
Indeed, numerous cases from this Court have assessed the adequacy of notice under the constraints of § 106 to determine the constitutionality of challenged legislation. In addition to City of Adamsville and Tanner v. Tuscaloosa County Commission, 594 So.2d 1207 (Ala.1992), these cases include Richards v. Izzi, 819 So.2d 25 (Ala.2001), Birmingham-Jefferson Civic Center Authority v. Hoadley, 414 So.2d 895 (Ala.1982), Wilkins v. Woolf, 281 Ala. 693, 208 So.2d 74 (1968), Calhoun County v. Morgan, 258 Ala. 352, 62 So.2d 457 (1952), State ex rel. Murphy v. Brooks, 241 Ala. 55, 1 So.2d 370 (1941), Commissioner's Court of Winston County v. State ex rel. County Highway Commission, 224 Ala. 247, 139 So. 356 (1932), and State ex rel. Wilkinson v. Allen, 219 Ala. 590, 123 So. 36 (1929). This is as it should be in light of the specific language of § 106 requiring judicial review of the legislature's compliance with the provisions of § 106:
"The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."
Review of the adequacy of the notice under § 106 is also mandated because such review does not substitute this Court's view for a fact already determined by the legislature. The fact that notice is published, if set out in the appropriate legislative record, is a finding by the legislature. However, there is no finding by the legislature concerning the constitutional adequacy of the notice provided for proposed local legislation under § 106nor could there be; such a legislative finding would imply that the published notice concerning proposed legislation was constitutionally adequate under § 106 before the legislation *838 was actually enacted. Rather, it is the special province of the courts,[10] in this case it is specifically required by the language of § 106, to determine whether the notice of the proposed legislation, which here became the 2009 Act, comports with the constitutional requirements imposed by § 106. Accordingly, we decline to retreat from this Court's long history of judicial review on this subject, and we now turn to the adequacy of the notice.

III. The Adequacy of the Notice

According to the affidavit of Greg Pappas, the clerk of the Alabama House of Representatives, the official legislative records contain the following notice, presented by Representative John Rogers for what became House Bill 13, which, when enacted, became the 2009 Act:
"NOTICE is hereby given that a bill substantially as follows will be introduced in any Special Session of the Legislature of Alabama held in 2009 and application for its passage and enactment will be made:
"A BILL TO BE ENTITLED AN ACT Relating to Jefferson County, to reenact Act 406 of the 1967 Regular Session (Act 1967, p. 1032), to authorize an occupational tax in Jefferson County; to remove the exemptions originally provided in Act 406, to provide for the distribution of the revenues received from the Jefferson County occupational tax; and to expressly repeal Act 99-669, 1999 Special Session."
("The Rogers notice.") Pappas's affidavit states:
"I understand there is some argument in this case that there may be other or additional `notices' applicable to HB 13. That argument is incorrect. The notice included herewith in Exhibit A and attached to the original copy of HB 13 as required by § 106 of the Alabama Constitution is the only notice recognized by the Legislature with regard to HB 13, Act 2009-811."
Although "notices" were also sent out by Representatives Arthur Payne and Roger Smitherman and published pursuant to § 106, those notices are not included in the official legislative records relating to the 2009 Act. In light of Pappas's affidavit that the only notice for the proposed legislation that became the 2009 Act is the Rogers notice, we reject the County's argument that any other notices are appropriate for this Court's review under § 106. The contents of the official legislative record are a determination made by the legislature that this Court will not second-guess, Etowah County and St. Elmo, supra. Moreover, we construe the language of § 106 directing the courts' review to the "journals" of the legislature to permit no consideration of notices other than those made part of the official legislative record.
The standard that governs this Court's review of the adequacy of notice under § 106 is well settled:
"The Constitutional framers adopted the notice requirements of Section 106 intending that `the essential or material part, the essence, the meaning or an abstract or compendium of the law, was to be given, and not its mere purpose or subject.' Wallace v. Board of Revenue, 140 Ala. 491, 37 So. 321 (1904). Out of the many decisions which have considered that section, four well-defined canons of construction have evolved: (1) the `substance' means an intelligible abstract or synopsis of its material and substantial elements; (2) the substance may be sufficiently stated without stating the *839 details subsidiary to the stated elements; (3) the Legislature may shape the details of proposed local legislation by amending bills when presented for consideration and passage; and (4) the substance of the proposed act as advertised cannot be materially changed or contradicted. State ex rel. Wilkinson v. Allen, 219 Ala. 590, 123 So. 36 (1929)."
Hoadley, 414 So.2d at 899. The statement in the notice of the "`substance of the proposed law' means not merely the subject of it, but an intelligible abstract or synopsis of its material and substantial elements," State ex rel. Murphy v. Brooks, 241 Ala. at 56, 1 So.2d at 370.
A comparison of the Rogers notice with the 2009 Act reveals a number of differences. Items contained in the 2009 Act that are not in the Rogers notice include the referendum provision contained in Section 8:
"The tax authorized to be levied by this act shall be phased out commencing October 1, 2012, unless its authorization is approved at a referendum held on the date of the primary election in June 2012. If a majority of the votes cast at the referendum are in favor of the continued authorization of the occupational tax, the tax shall continue to be authorized. If a majority of the votes cast at such referendum are not in favor of the continuation of the authorization of the occupational tax, the governing body is authorized to phase out the tax over a five-year period commencing October 1, 2012, with the rate of the tax reduced by 20 percent on October 1, 2012, and October 1 of each year for four years thereafter, at which time the tax shall terminate."
Also at variance with the Rogers notice is the provision in Section 7 of the 2009 Act providing for a retroactive tax extending back to November 29, 1999:
"All actions of the governing body in continuously levying, collecting, and enforcing the levy of the county occupational and license taxes pursuant to Act 406 since the time of the initial levies thereof, particularly from and after the effective date of Act 99-669, 1999 Second Special Session (Acts 1999, p. 168) are hereby ratified, validated, and confirmed. This act is therefore intended to be retroactive and curative to November 29, 1999; and all the exemptions originally provided in Act 406 shall remain in effect, except for the exemption for any person required to pay a privilege or license tax to the state or the county by Article 1, Chapter 20, Title 51 of the Code of Alabama 1940, which shall expire January 1, 2010, and the rate of tax shall be the rate at which the tax was levied on the effective date of this act until January 1, 2010, at which time the maximum shall be the rate specified in Section 6. On and after January 1, 2010, the county governing body shall have no authority to levy an occupational tax under Act 406."
With respect to the referendum and sunset provision, this Court considered an analogous situation Izzi, supra. Izzi also dealt with an occupational tax in Jefferson County when the notice for the proposed legislation imposing the tax failed to inform the public that the legislation as enacted would appropriate taxes to various charitable and educational institutions that were not specified in the notice, a provision that implicated Ala. Const. 1901, Art. IV, § 73, governing appropriations to charitable and educational institutions. The Court held that the notice, which omitted this information, rendered the act imposing the occupational tax constitutionally inadequate. The referendum provision in the 2009 Act certainly implicates Art. XI, § 212 ("The power to levy taxes shall not be delegated to individuals or private corporations or associations."). Moreover, *840 the costs involved in conducting a county-wide election to conduct the referendum is not a mere detail, but plainly goes to the "substance" of the 2009 Act.
With respect to Section 7 of the 2009 Act providing for the retroactivity of the taxes so as to restore the taxing authority conferred under the 1967 Act, it is noteworthy that the Rogers notice states only that the 1967 Act will be reenacted and the 1999 repeal Act will be repealed. We cannot conclude that the public was properly informed by the Rogers notice that the taxes that were held invalid in Edwards I and Edwards II were to be reimposed back to November 1999. The County's argument that the "repeal of the repealer" constituted such notice based on Mobile County v. State ex rel. Cammack, 240 Ala. 37, 197 So. 6 (1940), fails to persuade us. Although the repeal of an act that repeals another act may result in the revival of the original act, Cammack did not consider this principle in the context of a tax, nor can Cammack address the instant facts where the revival of the 1967 Act by the enactment of the 2009 Act would also change the exemptions originally provided in that act. Under these circumstances, we cannot conclude that the essential purpose of § 106that those affected be informed of the substance of the proposed local legislation, City of Adamsville, supra has been met.
The 2009 Act contains other variances from the Rogers notice that might also run afoul of the notice requirements of § 106. We need not further address those variances, however, because we conclude that the omission of either the referendum provision or the retroactive-taxation provision from the Rogers notice sufficiently implicates the "substance" of the 2009 Act so as to violate § 106.[11] Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
STUART, PARKER, MAIN, and WISE, JJ., concur.
SHAW, J., concurs in part and concurs in the result.
WOODALL, BOLIN, and MURDOCK, JJ., recuse themselves.
SHAW, Justice (concurring in part and concurring in the result).
I agree with much of the discussion in the main opinion, and I concur that the trial court's judgment is due to be affirmed. I write to make several observations.

I. Conflict Between § 106 and § 122

There is no facial conflict between Ala. Const. 1901, Art. IV, § 106, and Art. V, § 122. The possible conflict alleged by Jefferson County ("the County") is "latent"; it does not exist on the face of the two sections, but, instead, arises upon consideration of certain hypothetical scenarios. Specifically, the County notes that § 122 is designed to allow for the governor to call a special session to address extraordinary or emergency situations. See Opinion of the Justices No. 173, 275 Ala. 102, 103, 152 So.2d 427, 428 (1963) ("The clear import of [§ 122] is that it provides the machinery for convening the legislature because of extraordinary, or emergency, situations calling for legislative action in the interim between the regular meetings of the legislature."). The County contends, *841 however, that the four-week notice period of § 106 could, in certain situations, conflict with the need to expeditiously enact a local law in a special session. Stated differently, the County argues that a special session may be called in an emergency situation where a local law must be enacted in less time than the notice provision of § 106 would allow.
Such a hypothetical conflict does not exist in this case; in fact, one can envision numerous situations in which a local law can be enacted in accord with the time frame for notice provided in § 106. This case is just one such example. In interpreting the constitution, courts must give each section effect and, if possible, construe it so as not to create a conflict:
"It is established as a rule of interpretation of constitutions that the whole of such instrument or ordinance will be given effect, if possible; that is, that each section, clause and word thereof be given effect, if it can be so construed and not in conflict with other plain provisions of organic law."
State ex rel. Fowler v. Stone, 237 Ala. 78, 83, 185 So. 404, 407-08 (1938). See also State ex rel. Covington v. Thompson, 142 Ala. 98, 107, 38 So. 679, 682 (1905) ("Constitutions are made for practical purposes, and not merely for the exercise of critical gymnastics, and in the construction of them ... we are, if possible, to give the instrument such construction as will carry out the intention of the framers, and make it reasonable rather than absurd."). The County's argument that this Court should find a conflict between § 106 and § 122 based on certain hypothetical scenarios is unpersuasive. Any perceived inadequacies concerning the interplay between § 106 and § 122 would be more appropriately addressed by the people of Alabama by amending the constitution.

II. Justiciability

This case does not present a nonjusticiable political question. First, nothing in the plain language of § 106 requires such a holding. The final sentence of § 106 states: "The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section." The argument is advanced that, based on this sentence, the courts are limited to looking only at "the journals" in determining whether a local law "was passed in accordance with the provisions of" § 106. Because the textual history of § 106 belies any intention to limit the scope of judicial review in this manner, I must disagree.
Specifically, before its amendment in 1975 by Ala. Const. 1901, Amendment No. 341, § 106 required that proof that notice had been given would be by an affidavit, and that affidavit would be "exhibited" to each house of the legislature and "spread upon the journal."[12] For all that appears, *842 the last sentence mentions "the journals" because that is where the text of documents demonstrating compliance with § 106 would be found.
Amendment No. 341 deleted the requirement that an affidavit be placed in "the journal" as proof of publication; instead, the proof that the notice has been given is now exhibited to the legislature through a certification, which is not required to be "spread upon the journal." Now, under § 106 as amended, both notice and proof are attached to the bill, and all three items are filed in the Department of Archives and History and "constitute a public record."
The last sentence of § 106 places an affirmative duty on the courts to review whether a local law was passed in accordance with the requirements of § 106. To interpret the reference in that section to "the journals" as constituting a restraint on the courts would mean that, after the adoption of Amendment No. 341 in 1975, courts are restricted to looking only at the journals of the House of Representatives or the Senate, where the documents that demonstrate compliance with § 106 are no longer required to be "spread," but are forbidden to look at the public record, where the notice and proof and the original copy of the subject bill are now required to be kept. Such a result would be absurd.
In Birmingham-Jefferson Civic Center Authority v. City of Birmingham, 912 So.2d 204 (Ala.2005) ("BJCCA"), this Court, applying the test found in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), held that under the separation-of-powers doctrine found in Ala. Const. 1901, Art. III, § 43, the judicial branch did not have jurisdiction to interpret legislative rules and procedures when the constitution specifically granted the legislature the power to establish rules regarding its own proceedings. Thus, a challenge to a bill on the issue whether the bill was passed under the legislature's procedures with a sufficient number of votes created a nonjusticiable political question. In the instant case, the County contends that, under BJCCA and Baker, this Court similarly cannot review whether the notice was proper under § 106. In BJCCA, we discussed the test in Baker as follows:
"`It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.'
"[Baker], 369 U.S. at 217, 82 S.Ct. 691. The presence of one or more of the factors listed in Baker v. Carr indicates that a question is `political,' that is, one reserved for, or more suitably determined by, one of the political branches *843 of government. If a question is one properly to be decided by the executive or legislative branch of government, rather than by the judicial branch, we will not decide it."
912 So.2d at 214-15 (footnote omitted; all alterations except final alteration in BJCCA). The County contends that all six Baker factors militate against the court's exercising jurisdiction over the § 106 issue in this case. I disagree.
As discussed above, § 106 commands the courts to review whether the passage of a local law complies with the provisions of § 106. Thus, § 106 actually commits to the judicial branch the role undertaken in this case. There can be no "textually demonstrable constitutional commitment of the issue" or the "impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government," because the very text of § 106 commands such a judicial role in the decision-making process. BJCCA, 912 So.2d at 214-15. Because § 106 explicitly gives the courts the final word on whether a local law was passed in accordance with that section, there is no need for "unquestioning adherence" to the legislature's certification, and a holding by the courts that the notice is insufficient cannot result in "embarrassment from multifarious pronouncements by various departments." BJCCA, 912 So.2d at 915. Further, there is no "lack of judicially discoverable and manageable standards for resolving" whether the passage of a local law complies with § 106; as the main opinion correctly notes, "numerous cases from this Court have assessed the adequacy of notice under the constraints of § 106 to determine the constitutionality of challenged legislation." 69 So.3d at 837. Finally, there is no need for a "policy" determination in resolving this issue, because the "policy" of § 106 has been made clear:
"The Constitutional Convention of 1901 addressed itself to the task of preventing the growing evil of local legislation.... Section 106 throws certain safeguards around special, private, or local laws not forbidden by the Constitution. It declares no such law shall be passed unless notice of the intention to apply therefor, stating the substance of the proposed law, shall have been published at least once a week for four consecutive weeks in some newspaper published in the county; that proof of such notice be made by affidavit and spread upon the journals. The courts are enjoined to pronounce void all such laws if proof does not affirmatively appear in the journals. This court has been called upon in numerous cases to construe and enforce these and other provisions governing the passage of laws by the Legislature."
Byrd v. State ex rel. Colquett, 212 Ala. 266, 268, 102 So. 223, 225 (1924) (overruled on other grounds, St. Elmo Irvington Water Auth. v. Mobile County Comm'n, 728 So.2d 125, 127 (Ala.1998)).[13] The courts act consistently with the policy and dictates of § 106 by reviewing whether a local law was properly passed under that section.

III. The Adequacy of the Notice

The text of Act No. 2009-811, Ala. Acts 2009 ("the 2009 Act"), deviates materially from the published notice in several respects. The notice accepted by the legislature in this case states, in pertinent part:
"A BILL TO BE ENTITLED AN ACT Relating to Jefferson County, to reenact Act 406 of the 1967 Regular Session (Act 1967, p. 1032), to authorize *844 an occupational tax in Jefferson County; to remove the exemptions originally provided in Act 406, to provide for the distribution of the revenues received from the Jefferson County occupational tax; and to expressly repeal Act 99-669, 1999 Special Session."
The plain language of the notice thus anticipated that the local law would revive Act No. 406, Ala. Acts 1967, "to authorize an occupational tax in Jefferson County."[14] The notice also indicated that the exemptions in Act No. 406 would be removed. In other words, according to the notice, Act No. 406 would be revived, with its exemptions removed, but only to the extent it authorized an occupational tax.
The 2009 Act, however, is dramatically different. Specifically, it seems to have authorized two different taxes. The first tax authorized was through the reenactment of Act No. 406 with the original exemptions removed but was not limited solely to an occupational tax. The authority for that tax expired on December 31, 2009.[15] Further, under section 4[16] of the 2009 Act, a different tax, described as "an occupational or license or privilege tax upon any person for engaging in any business in the county," was to be authorized beginning on January 1, 2010.[17] Certain exemptions for this particular tax were created in the 2009 Act.
It is clear that, although Act No. 406 was revived by the 2009 Act and stripped of its exemptions in accord with the notice, the 2009 Act, contrary to the notice, retroactively authorized more than "an occupational tax in Jefferson County." Further, the 2009 Act included a completely new authorization, unmentioned in the notice. That authorization allowed, in addition to an occupational tax, what the parties describe as a "business-license tax," which tax was not disclosed in the notice.[18] Further, this second authorized tax contains certain exemptions. Thus, the notice indicated *845 that the legislature intended to consider reenacting only an occupational tax without the original exemptions, but the legislature actually enacted an occupational and business-license tax that does contain exemptions. Because the notice did not mention these aspects of the legislation, it failed to state the substance of the 2009 Act. Thus, the 2009 Act was passed in violation of the notice requirements of § 106 and is, therefore, unconstitutional.

APPENDIX

AN ACT
Relating to Jefferson County; to reenact Act 406 of the 1967 Regular Session (Acts 1967, p. 1032), to authorize an occupational tax in Jefferson County; to remove certain exemptions originally provided in Act 406; to expressly repeal Act 99-669, 1999 Second Special Session; to ratify and confirm the actions of the county governing body in previously levying and collecting the taxes levied under Act 406 and to provide that the provisions hereof are retroactive and curative to the extent herein set out; to provide for a referendum; and to provide that if a majority of the voters vote against the continuation of the tax, the authority to levy the tax would be phased out.
BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
Section 1. This act shall apply only to Jefferson County.
Section 2. As used in this act, the following words and terms shall have the meanings ascribed to them:
(1) BUSINESS. Business, vocation, occupation, calling, or profession.
(2) COUNTY. Jefferson County.
(3) GOVERNING BODY. The Jefferson County Commission.
Section 3. The purpose of this act is to reenact Act 406 of the 1967 Regular Session (Acts 1967, p. 1032) without the exemption originally granted by Act 406 to any person required to pay a privilege or license tax to the state or the county by Article 1, Chapter 20, Title 51 of the Code of Alabama 1940.
Section 4. The governing body of the county is authorized to levy an occupational or license or privilege tax upon any person for engaging in any business in the county for which the person is not required by law to pay any tax pursuant to Section 40-16-4, 40-21-50, 40-21-52, 40-21-53, 40-21-56, or 40-21-60 of the Code of Alabama 1975.
Section 5. The tax hereby authorized to be levied shall be paid to that officer or employee of the county chargeable with the duty of collecting license or privilege taxes payable to the county.
Section 6. The tax authorized to be levied by the governing body of the county on any person for engaging in any business may not exceed the rate of forty-five hundredths of one percent (.0045) of compensation, excluding benefits, or net income before taxes, whichever is less, of business activity conducted in the county. The tax may not be increased without the approval of the Alabama Legislature.
Section 7. All actions of the governing body in continuously levying, collecting, and enforcing the levy of the county occupational and license taxes pursuant to Act 406 since the time of the initial levies thereof, particularly from and after the effective date of Act 99-669, 1999 Second Special Session (Acts 1999, p. 168) are hereby ratified, validated, and confirmed. This act is therefore intended to be retroactive and curative to November 29, 1999; and all the exemptions originally provided in Act 406 shall remain in effect, except for the exemption for any person required to pay a privilege or license tax to the state or the county by Article 1, Chapter 20, Title 51 of the Code of Alabama 1940, which shall expire January 1, 2010, and the *846 rate of tax shall be the rate at which the tax was levied on the effective date of this act until January 1, 2010, at which time the maximum shall be the rate specified in Section 6. On and after January 1, 2010, the county governing body shall have no authority to levy an occupational tax under Act 406.
Section 8. The tax authorized to be levied by this act shall be phased out commencing October 1, 2012, unless its authorization is approved at a referendum held on the date of the primary election in June 2012. If a majority of the votes cast at the referendum are in favor of the continued authorization of the occupational tax, the tax shall continue to be authorized. If a majority of the votes cast at such referendum are not in favor of the continuation of the authorization of the occupational tax, the governing body is authorized to phase out the tax over a five-year period commencing October 1, 2012, with the rate of the tax reduced by 20 percent on October 1, 2012, and October 1 of each year for four years thereafter, at which time the tax shall terminate.
Section 9. All laws or parts of laws which conflict with this act are repealed, and Act 99-669, 1999 Second Special Session (Acts 1999 Second Special Session, p. 168), is expressly repealed.
Section 10. If any provision of this act shall be held by any court of competent jurisdiction to be invalid, such invalidity shall not affect any other provisions of this act and the act shall be given full force and effect as completely as if the invalid provision had not been included.
Section 11. This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.
Approved August 14, 2009.
NOTES
[1] Because all the circuit judges in Jefferson County recused themselves, Judge Charles Price, presiding judge of the Montgomery Circuit Court, was appointed to adjudicate the case.
[2] The 2009 Act is attached to this opinion as an appendix.
[3] Section 105 provides:

"No special, private, or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state; and the courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and as to whether the relief sought can be given by any court; nor shall the legislature indirectly enact any such special, private, or local law by the partial repeal of a general law."
[4] In pertinent part, § 106 provides:

"No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the state, in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive weeks in some newspaper published in such county or counties or if there is no newspaper published therein, then by posting the said notice for two consecutive weeks at five different places in the county or counties prior to the introduction of the bill; and proof that said notice has been given shall be exhibited to each house of the legislature through a certification by the clerk of the house or secretary of the senate that notice and proof was attached to the subject local legislation and the notice and proof shall be attached to the original copy of the subject bill and shall be filed in the department of archives and history where it shall constitute a public record. The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."
[5] The plaintiffs' Rule 59(e), Ala. R. Civ. P., motion filed in the trial court seeking the amendment or vacation of the trial court's order denying their request for a refund is not before the Court.
[6] Section 122 provides:

"The governor may, by proclamation, on extraordinary occasions, convene the legislature at the seat of government, or at a different place if, since their last adjournment, that shall have become dangerous from an enemy, insurrection, or other lawless outbreak, or from any infectious or contagious disease; and he shall state specifically in such proclamation each matter concerning which the action of that body is deemed necessary."
[7] The January 12, 2009, order held that the 1999 repeal Act had repealed the 1967 Act and that the "collection of the occupational tax pursuant to the authority granted in the 1967 Act was illegal," Edwards II, 49 So.3d at 688.
[8] As the result of the official recodification of the Alabama Constitution, Amendment No. 239 and Amendment No. 314 have now been incorporated in Vol. 2, Local Amendments, Jefferson County, § 12.
[9] The 22 days required for the notice requirements of § 106 could be accomplished within the 12-legislative-day/30-calendar-day limit for the duration of a special session pursuant to Ala. Const. 1901, Art. IV, § 76.
[10] Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."). See also Opinion of the Justices No. 338, 624 So.2d 107 (Ala. 1993).
[11] We note further that mention of the severability clause set out in Section 10 of the 2009 Act in also omitted from the Rogers notice. Even if this clause had effect, however, our precedent holds that a severability provision cannot operate to save an act from a violation of § 106. See Tanner v. Tuscaloosa County Comm'n, 594 So.2d 1207 (Ala.1992), and Calhoun County v. Morgan, 258 Ala. 352, 62 So.2d 457 (1952) (both holding generally that any violation of § 106 notice requirements renders the entire act void).
[12] Section 106 originally provided, in pertinent part:

"No special, private, or local law shall be passed on any subject not enumerated in section 104 of this Constitution, except in reference to fixing the time of holding courts, unless notice of the intention to apply therefor shall have been published, without cost to the state, in the county or counties where the matter or thing to be affected may be situated, which notice shall state the substance of the proposed law and be published at least once a week for four consecutive weeks in some newspaper published in such county or counties, or if there is no newspaper published therein, then by posting the said notice for four consecutive weeks at five different places in the county or counties prior to the introduction of the bill; and proof by affidavit that said notice has been given shall be exhibited to each house of the legislature, and said proof spread upon the journal. The courts shall pronounce void every special, private, or local law which the journals do not affirmatively show was passed in accordance with the provisions of this section."
[13] Byrd was decided before Amendment No. 341 was ratified. However, the "policy" of § 106 remains unchanged by that amendment.
[14] The phrase "to authorize an occupational tax in Jefferson County" is joined to the phrase "to reenact Act 406 of the 1967 Regular Session" by a comma; it appears that the phrase "to authorize an occupational tax in Jefferson County" thus modifies or restricts the phrase "to reenact Act 406 of the 1967 Regular Session" and is separate from the rest of the items in the sentence by virtue of the subsequent semicolons.
[15] Section 7 of the 2009 Act provides in part: "On and after January 1, 2010, the county governing body shall have no authority to levy an occupational tax under Act 406."
[16] Section 4 of the 2009 Act provides:

"The governing body of the county is authorized to levy an occupational or license or privilege tax upon any person for engaging in any business in the county for which the person is not required by law to pay any tax pursuant to Section 40-16-4, 40-21-50, 40-21-52, 40-21-53, 40-21-56, or 40-21-60 of the Code of Alabama 1975."
[17] Under section 8 of the 2009 Act, authorization for this tax was to be "phased out commencing October 1, 2012, unless its authorization is approved at a referendum...."
[18] The County contends that the phrase "occupational tax" in the notice would also indicate that a "license or privilege tax" could be enacted. Specifically, the County argues that there is no clear distinction between license, occupational, and privilege taxes. I find this argument unpersuasive. Specifically, Ala. Code 1975, § 40-12-31, describes "occupational taxes" as being "imposed on an individual's engaging in any occupation, business, or profession without any regard to whether he or she has a license to, or pays a license tax or fee in order to, carry on that occupation, business, or profession." (Emphasis added.) The 2009 Act, however, specifies a far more expansive tax. Instead of authorizing a tax on an "individual's engaging in any occupation, business, or profession," it also authorized a "license or privilege tax upon any person for engaging in any business in the county." (Emphasis added.) See Ala.Code 1975, § 1-1-1(1) ("The word `person' includes a corporation as well as a natural person.").